SIEGRIST *et al.* V. ARNOT, *Appellant.*

1. **Negligence :** CARELESS DRIVING, WHEN OWNER OF CARRIAGE NOT RESPONSIBLE. One who gets into the carriage of another without his consent or knowledge, and is injured by the careless driving of the latter, while so ignorant of his presence in the carriage, cannot recover for the injury.

2. ———: PERSON IN DANGER. Where a person is placed in peril by the carelessness of another who owes him a duty of safely carrying him, the propriety of an attempt to escape a reasonably apprehended danger is not to be determined by what a person of ordinary care and prudence would have done under the circumstances.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Fisher & Rowell* for appellants.

(1) "The liabilities of a common carrier do not apply to those who let horses and carriages for hire." Cooley on Torts, 638. (2) "A common carrier is one who regularly undertakes, for hire, to carry goods and passengers between different places, for such as may offer." Cooley on Torts, 638. (3) The defendant's contract to loan his carriages was a gratuitous bailment, and subject only to such liability as the law prescribes for that kind of a contract. A gratuitous bailor is held only for gross negligence, which is the omission of care, which even the most inattentive and thoughtless never fail to take of their own concerns. *Gray v. M. R. P. Co.*, 64 Mo. 49 ; *Lygo v. Newbold*, 9 Ex. 302 ; Wharton on Negligence, sec. 430 ; *Gartside v. Proprietor*, 4 T. R. 581 ; *Lamb v. Western Railroad*, 7 Allen 98 ; *Carr v. Boston & L. Railroad*, 14 Allen 448 ; *Harper v. Hartford & N. H. Railroad*, 37 Conn. 272 ; Story on Bailments, secs. 6, 374, 390. If one loan a horse to another,

the borrower becomes a gratuitous bailee. 37 Ill. 250; *Lobensteim v. Preckett*, 8 Kas. 213. The borrower must use the property as agreed upon, and there is no liability if he does not so use it. Story on Bailments, secs 227, 232, 234-5, 396, 413; *McCarty v. Young*, 6 H. & M.; *Horne v. Meakin*, 115 Mass. 326. This case is high authority to the effect that even if the bailment is for hire, no one but the party hiring it can recover damages. A father claimed to hire a horse and vehicle for his son to attend a funeral with his wife, the latter being injured by the horse running away. There was evidence that the horse was a fractious animal. The defendant claimed that the horse was let to the father. The court held that if the horse was let to the father and used by the son, there could be no recovery. *Lygo v. Newbold*, 9 Ex. 302, was a case where a party got upon a conveyance by permission of defendant's servant, and was injured, and the court held that getting upon the vehicle without authority precluded a recovery; that the party ought to have known she had no right to be there. (4) "There can be no contract to transport safely, where there is no contract at all." *Norton v. Western Railroad*, 15 N. Y. 449; Shearman & Redfield on Negligence, sec. 264. If a person has no lawful right to be on a vehicle, he cannot recover damages, except for gross negligence, after the latter has notice of the person's presence. *Id.* The defendant's instruction is sustained by *Fink v. Potter*, 17 Ill. 406; *Ingalls v. Bliss*, 9 Met. 1. (5) There was no eror in excluding the rebuttal evidence of Mrs. Siegrist. No proper foundation was laid for contradiction of Mrs. Garneau. Her attention was not called to a definite time and place, nor was the testimony material, for the defendant was not liable for what Mrs. Garneau did with her carriages.

*E. B. Shei zer* for respondent.

(1)   The instructions asked by defendant should have been given.   *Minter v. Railway*, 41 Mo. 503; Story on Agency, sec. 452; *Garretzen v. Duenckel*, 50 Mo. 104; *Higgins v. Watervliet Road*, 46 N. Y. 23; Cooley on Torts, 143, 539; *Willen v. Ry.*, 107 Mass. 107; *Jacobus v. Ry.*, 20 Minn. 125; *Steamboat v. King*, 16 How. (U. S.) 474. (2) Defendant's instructions should not have been given. If plaintiff leaped from the carriage in order to escape some impending danger, to which the negligence of defendant's servants exposed her, defendant, as author of the original peril, is answerable, provided the danger in remaining is apparently as great as that to be encountered in jumping out.   *Nelson v. Ry.*, 68 Mo. 595; *Schultz v. Ry.*, 44 Wis. 638.   The instructions given by the court of its own motion were inapt and misleading; such epithet, "gross," is "inapt and misleading." *Harper v. Railroad*, 44 Mo. 488, 491; *Lockwood v. Railroad*, 17 Wallace, 357, 371, 382, 383; Bigelow on Torts, 266; *Milwaukee Road v. Arms*, 91 U. S. 489, 494, 495; *McPheeters v. Railroad*, 45 Mo. 22, 26; *Lemon v. Chanslor*, 68 Mo. 340, 357, 358.

HENRY, C. J.—This is an action by plaintiff for damages for an injury to Mrs. Siegrist, which she sustained by being thrown from a carriage of defendant, in the city of St. Louis.   Defendant had a judgment in the circuit court, which was reversed by the court of appeals, and it is now here on appeal from the latter judgment.

Defendant was a livery stable keeper, and gratuitously furnished four of his carriages, and a driver for each, to carry to and from Mercantile Library Hall some young ladies and gentlemen who were to take part in a performance there for the benefit of orphans.   It was

distinctly agreed between the defendant and Mrs. Gar-
neau, who, with Miss Hopkins, managed the entertain-
ment, that the carriages were for the use of the ladies
and gentlemen who took parts in the tableaux, and that
Mrs. Garneau was to furnish to defendant the names of
the parties to be carried in his vehicles, so arranging
them as to make the least travel for each carriage.
This was furnished, and in one of defendant's carriages
Miss Wickham, Miss Garrison and Miss Barney were
taken to the hall, the driver calling at the residence of
each of these ladies for them, neither of them directing
him whom he should go for. The testimony is uncon-
tradicted that the names of persons to go in his car-
riages were furnished to defendant, and the fact equally
well established that the driver of this particular car-
riage went for those three ladies who did perform on
the occasion, corroborates the testimony of defendant,
that each of his drivers had a list of the names of the
persons who were to be carried in the carriage driven
by him.

After the entertainment Mrs. Siegrist, who had
taken no part in the performance, but whose daughter
had, got into the carriage, she says, by direction of
Mr. Garneau, son of Mrs. Joseph Garneau, who had
made the arrangement with defendant, and soon after
the three young ladies who had gone there together got
into the carriage in which Mrs. Siegrist had taken her
seat. Young Garneau was stationed there to seat per-
formers in the carriage. There is not a particle of evi-
dence tending to prove that the driver knew that Mrs.
Siegrist was in the carriage ; she says she did not see him,
or speak with him. He was at his place on the box,
outside, when she took her seat. · It was eleven o'clock
at night. He had reason to suppose that he would carry
those home who had gone to the hall in his carriage.
After letting the three young ladies out of the carriage,
the last one at Judge Wickham's door, his horses took

fright and ran, and Mrs. Siegrist was thrown from the carriage and the driver from his seat. It is a significant fact, that when on the ground, stunned by the fall, he said, answering a question, that there was no one in the carriage, and this tends strongly to prove that it was the same carriage in which the young ladies above named had gone to the hall, and that the driver did not know that Mrs. Siegrist was in his carriage. Her young son had ridden from the hall on the box with the driver, but had got down at Judge Wickham's, and there is no evidence tending to prove that the driver knew that he was Mrs. Siegrist's son, or who he was.

Mrs. Siegrist had no arrangement with Mr. Arnot, or his driver, or with Mrs. Garneau, to ride in Arnot's carriage. Neither Arnot nor his driver knew that she had taken a seat in the carriage, and she must have known that she had no right to a seat in it. On these facts, what is the law?

The court declared it to be as follows: "The jury are instructed that if they believe from the evidence that the carriage was furnished gratuitously by the defendant under an agreement with him that it was to be used only in the conveyance to and from the library of persons who were to perform in the tableaux mentioned in the evidence, and if they further believe that the plaintiff, Mrs. Siegrist, was not one of such performers, and that she entered said carriage without the knowledge or consent of the defendant, then the defendant is not liable for any injuries she may have sustained while being driven in said carriage, even though the driver of said vehicle had undertaken to drive her to her home, unless the jury shall further find that such injuries were occasioned by gross carelessness on the part of the defendant. And in order to find the defendant liable on account of such carelessness, the jury must believe from the evidence that at the time of the accident the driver of said vehicle was so intoxicated as to be unfit

Siegrist v. Arnot.

to manage the team entrusted to him, and that this fact was known to the defendant and not known to said plaintiff, or that the habits of said driver, either as to drunkenness or carelessness, were such as to render him an unsafe or unfit person to be placed in charge of a vehicle, and that such habits were known to the defendant at the time ; and further, that the injuries received by the said plaintiff were occasioned by the drunkenness or carelessness of said driver."

Defendant was not a common carrier. He was under no obligation to carry any one that night except those for whom the carriage was engaged, and is certainly not to be held to a stricter liability than that declared in the instruction. If neither Arnot nor his driver knew that Mrs. Siegrist had taken a seat in the carriage, upon what principle is Arnot to be held liable? There were no contract relations betwixt himself and Mrs. Siegrist, no legal requirement that he should carry her. She knew she had no right there, and stands in some respects, so far as Arnot is concerned, as one to a railroad company, who, without right, and without the knowledge of the employes of the company, gets upon its train and is injured ; the only difference being, in Arnot's favor, that he is not, while the railroad corporation is, a common carrier.

If one gets into the vehicle of another, without his knowledge or consent, and is by careless driving of the latter injured, is it possible that the latter would be liable to him for damages, however gross the negligence is? How is the case at bar to be distinguished from the case supposed? If Arnot had been driving, he would not have been liable to Mrs. Siegrist for negligent driving, if ignorant that she had taken a seat in his carriage. We think that the instruction given by the court was as favorable to plaintiffs as they had a right to ask, even more favorable than the facts warranted.

Of plaintiffs' refused instructions, one of them as-

serted the liability of one who, whether a common carrier or not, undertakes to carry another, and another declared that the ownership of the carriage and the employment of the driver constituted the latter the servant of Arnot, who was answerable for negligence committed by him, within the scope of his employment. As abstract propositions of law they are correct, but have no application to the facts of this case, because there was no evidence that Arnot, or his driver, agreed to carry Mrs. Siegrist, or knew that she had taken a seat in the carriage. Another refused instruction declared Arnot liable if young Garneau seated Mrs. Siegrist in the carriage. Mr. Garneau did not represent either Arnot or the driver, and had no authority from any one to give her a seat in Arnot's carriage, nor did he inform the driver when he seated Mrs. Siegrist that it was she, and not one of the young ladies he had carried to the hall. The others of plaintiffs' refused instructions predicated the right of Mrs. Siegrist to recover, one upon the fact that she entered the carriage in good faith, believing that she had a right to be carried home in it, and was not notified by defendant or his driver, or any one for him, that the carriage was for the use of those only who had taken part in the performance. Another declared defendant liable if no objection was made by defendant or his driver to her riding in the carriage. Another declared that the permission of defendant or the driver, for plaintiff to ride, might be found from the acts and silent acquiescence of defendant or his agent.

The objection to these instructions, and all the others not heretofore mentioned, which contain the same vice, is that they submitted questions to the jury not warranted by the evidence. There was no testimony having a tendency to prove that Arnot, or his driver, consented that Mrs. Siegrist should ride in the carriage, or knew that she had taken a seat in it. Nor were any facts proved which gave her any grounds to believe that

she had a right to be driven home in that carriage. She had not gone in one of Arnot's carriages to the hall, she had taken no part in the performance. Her daughter neither went to or from the hall in this carriage. Mrs. Siegrist's name was not on the list of those given to Arnot, and by him to the driver, to be carried in his carriage; and, as far as the record shows, she has no more grounds than any other lady at the hall as a spectator to suppose that she had the right to a seat in the carriage. As to the acquiescence of the defendant or the driver in her taking a seat in the carriage, it is sufficient to say that one will not be held to have acquiesced in that of the existence of which he was utterly ignorant. If, from the evidence, the jury had found that either Arnot or his driver consented that Mrs. Siegrist should ride in the carriage, or knew that she had taken a seat in it, it would have been the duty of the court to set aside such finding as wholly unwarranted by the testimony, and it would, therefore, have been error to submit such a question in instructions.

The second instruction given at defendant's instance is erroneous as an abstract proposition of law:

"The court instructs the jury that if they believe, from the evidence and circumstances in this case, that Mrs. Siegrist jumped or got out of the carriage in question, and was injured in consequence of doing so, and that she would not have been injured if she had remained in the carriage, and that a person of ordinary prudence and care would have remained in said carriage at the time she jumped out, or got out, then plaintiff cannot recover in this case."

In the first place, there was no evidence tending to prove that Mrs. Siegrist jumped from the carriage, and, in the second place, if she was in the carriage with the consent of Arnot or the driver, and had jumped from the carriage, it would not have precluded a recovery. If

one is placed in peril by the recklessness or carelessness of another who owes him a duty of safely carrying him, the propriety of an attempt to escape a reasonably apprehended danger is not to be determinsd by what a person of ordinary prudence and care would have done under the circumstances.   But Mrs. Siegrist, having taken a seat in this carriage, without the knowledge or consent of defendant or his driver, or Mrs. Garneau, and having no right to ride in the carriage, whether she jumped out of it or was thrown from it is immaterial, so far as concerns this controversy.

In support of the general propositions herein announced, we refer to Wood on Master and Servant, sec. 279; *Snyder v. Ry. Co.*, 60 Mo. 413; *Flower v. Penn. Ry. Co.*, 69 Pa. St. 210; *Satterlee v. Groat*, 1 Wend. 272.

The judgment of the court of appeals is reversed, and that of the circuit court affirmed.   The constitutional amendment, establishing the Kansas City court of appeals, having taken from the St. Louis court of appeals jurisdiction of this case, the mandate of this court will go to the St. Louis circuit court, in which the cause originated.   All concur, except Black, J., who dissents.

BLACK, J., DISSENTING.—The instructions, as a whole, given in this case, assume that Mrs. Siegrist was rightfully in the carriage.   They improperly use the word "gross," but as they hypothecate the facts upon which the plaintiff may recover, that may be overlooked. They require of the defendant only ordinary care and prudence, and he is made liable only in the event that he furnished a drunken or incompetent driver, knowing him to be such.   Although the furnishing of the carriage was wholly a matter of gratuity, they go quite to the verge of the law in the defendant's favor, as I understand it to be written.   The opinion of the court just filed goes much further than do these instructions upon

which the cause was tried, and holds, as a matter of law, upon all the evidence, that she was a trespasser, a wrong-doer, and while in the carriage outside of and beyond the pale of ordinary care ; in short, that the defendant owed no duty whatever to her. To all this I cannot and do not agree, but dissent therefrom.

