## Leroy Payne
### v.
## Mary Halstead.

*Master and Servant—Negligence of Servant—Injury to Third Persons —Furnishing of Coach, Team and Driver by Liveryman—Duty and Responsibility of Liveryman—Instructions—Carriers.*

1. Where for a contract price a liveryman furnishes a coach, team, harnesses and driver to convey a party to a place and by a route desig-

nated by the party hiring, the liveryman is only responsible for ordinary and reasonable care in the premises.

2. In an action brought to recover damages for an injury received by one of the passengers through the capsizing of a coach, it was error for the court to instruct the jury that if the driver failed to exercise the utmost care and skill, and by reason of such failure an accident occurred, the liveryman was responsible; likewise, that it was the duty of the liveryman to furnish a driver acquainted with the route pursued.

3. The fact that the coach was upset was *prima facie* evidence that there was negligence on the part of the liveryman, but it was only required in order to rebut the presumption, that he show that he had exercised ordinary care and prudence.


[Opinion filed March 4, 1892.]


APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.


Mr. GEORGE F. WESTOVER, for appellant.

A common carrier of persons is one who makes it a regular business for hire to carry persons between the places to and from which he is accustomed to run vehicles.    2 Shearman & Redfield on Negligence, 487.

A livery stable keeper, who lets out a team for use temporarily for a specific object, hauling goods or carrying a party of persons, is not a common carrier.    City of Havana v. Vanlaningham, 17 Ill. App. 62.

The second instruction given for plaintiff is more erroneous than the first.

It assumes that the plaintiff need prove but one fact, to entitle her to recover, to wit, the overturning of the coach. That being proven, it says, " the plaintiff need prove nothing more."

It assumes the defendant was a common carrier on the occasion specified.

It assumes the defendant had entire control of the coach.

It assumes that the driver was under the defendant's directions, and that defendant must show, despite the immediate orders and directions of McAuley & Elliott, that whatever the driver did was of the utmost skill, prudence, care and caution.

The last sentence in the instruction is blind, ungrammatical, ambiguous, and liable to mislead. What mean the words therein, "by reason of which failure the injury was occasioned?" What failure? Does the instruction assert that the injury was occasioned by reason of failure to use the care required?

Although it is the duty of a common carrier of passengers to use the utmost care and skill which prudent men are accustomed to use under similar circumstances, he is not an insurer, and is not responsible for injuries to passengers, unless they be caused by the negligence of his employes, and this must be shown. 2 Shearman & Redfield on Negligence, 494, 495.

If he fails to furnish competent and careful drivers, he will be liable to passengers for injuries sustained by reason of omission. Tuller v. Talbot, 23 Ill. 357.

Messrs. SMITH, HELMER & MOULTON, for appellee.

In Laugher v. Pointer, 5 Barn. & Cres. 547, cited by appellee, in the opinion by Abbott, C. J., a liveryman who furnished a team and driver for an excursion, was held liable to the same extent as a stage proprietor taking a passenger from one stage to the other on a regular route.

"I must own that I can not perceive any substantial difference between hiring a pair of horses to draw my carriage about London for a day and hiring them to draw a stage on a road I am traveling, the driver being in both cases furnished by the owner of the horses in the usual way; nor can I perceive any substantial difference between hiring horses to draw my own carriage on these occasions and hiring a carriage with them, of their owner."

\*        \*        \*        \*        \*        \*        \*

"If the temporary use and benefit of the horses will make the hirer answerable and there be no reasonable distinction between hiring them with or without a carriage, must not the person who hires a hackney coach to take him for a mile, or other greater or less distance, or for an hour or longer time, be answerable for the conduct of the coach-

man ? I believe the common sense of all men would be shocked if any one should affirm the hirer to be answerable in either of these cases. Would it be said that the hirer is not answerable in either of these cases because the coachman is ready to attend to the call of any person who would hire him ? I answer so also is the stable keeper."

\*        \*        \*        \*        \*        \*        \*

" If the personal presence of the hirer will render him liable, why should he not be clearly so if he is absent but has hired the horses or carriage for his family or servants ? "

\*        \*        \*        \*        \*        \*        \*

" The hirer makes no contract with the coachman; he does not select him; he has no privity with him; he usually gives him a gratuity, but he is not obliged by law to give him anything; and from this I conclude that the coachman is not the servant of the hirer on such an occasion, but is chosen and intrusted by the owner of the horses to conduct and manage them. I think it can not be said that the hirer has in law what he certainly has not in fact, the conduct and management of the horses. If the coachman is in such a case servant of the hirer, he may at any moment require him to quit the charge of the horses and deliver them over to another and must be obeyed. But I think it can not be said that the coachman may not lawfully refuse and ought not in most cases to do so."

Unless this court is prepared to hold that Leroy Payne, under the circumstances, was not a common carrier of passengers, then the instructions given to the jury on the trial of the case must be held to be proper, as they were taken almost verbatim from a similar case. Tuller v. Talbot, 23 Ill. 357.

MORAN, J. This appeal is from a judgment recovered by appellee for damages received by her through the capsizing of a coach in which she was riding, and which, it is alleged, was owned by, and at the time of the accident under the control of, appellant. The facts are, that a firm of real estate

agents desiring to take a party of guests upon an excursion to view lands which said agents had for sale, arranged with appellant to furnish a tally-ho coach, team and driver to carry the party out and back for a contract price of $25. The driver directed as to the loading of the coach with those going on the excursion, of whom appellee was one, dividing the party about evenly outside and inside the coach, and one of the hirers of the coach sat beside the driver and gave him orders where to go. The party were driven through the city and out through and beyond Humboldt Park and over and upon certain streets which were unpaved. In making a turn on one of these unpaved streets to bring the coach in front of a pavilion, as the driver was directed to do, one of the wheels went into a mud hole and the coach tipped over, whereby appellee received the injury complained of. Appellant complains that the trial court assumed that he was on this occasion a common carrier of passengers and applied to him the rule of law as to the liability of a public carrier of passengers, which rule, he contends, is not the proper measure of his responsibility. The instructions given for the plaintiff do assume that appellant was in the transaction a common carrier of passengers. The second instruction given to the jury at the request of the plaintiff, sufficiently indicates the stringent rule applied as against appellant. Said instruction is as follows : " You are further instructed that the upsetting of the stage coach in this case, if proven to the satisfaction of the jury, is *prima facie* evidence of neglect and the plaintiff need prove nothing more; but it devolves on the defendant to prove that his driver acted with the utmost skill, prudence and caution, and that the injury sued for was caused without the least negligence or want of skill or prudence on the part of the driver. And if the defendant fails to satisfy the jury that his driver exercised the utmost degree of care and skill and prudence, by reason of which failure the injury was caused, the defendant is liable."

This instruction is a statement of the strictest and highest degree of diligence that is required of public carriers of

passengers.    It requires the defendant to provide for safety
as far as human foresight will go.    Such rule is not applica-
ble to a livery stable keeper who lets his team and vehicle,
accompanied by a driver of his own selection, for hire to go
upon a particular journey.    Such livery stable keeper is not
a common carrier of passengers, and does not assume the
duties and obligations of such a carrier.    He is at most a
private carrier for hire, and is required to exercise the same
measure of skill and care which is applied to a person en-
gaged in any special pursuit in which he undertakes to per-
form services for others for compensation.    Such a one
undertakes to possess the skill adequate to the undertaking,
and promises to exercise due diligence and care in its per-
formance, but ordinary skill, diligence and prudence are all
that the law exacts from him; that is, the exercise of such
care and skill as prudent and cautious men experienced in
the business are accustomed to use under similar circum-
stances.    Hutchinson on Carriers, Sec. 501, note; Shoe-
maker v. Kingsbury, 12 Wall. 369.

The highest degree of diligence is the rule as to public
carriers of passengers, and public policy forbids its relaxa-
tion; but a private carrier for hire may discharge himself
from liability for accident by showing that he exercised the
usual skill, care and diligence ordinarily exercised by those
engaged in the same pursuit, to furnish a safe coach, harness
and horses, and a competent and careful driver.    While
it is correct to say, as was said in the instruction, that the
upsetting of the stage coach was *prima facie* evidence
of negligence, which cast on defendant the duty of explain-
ing the accident and the burden of proving that proper care
and diligence had been exercised on his part, yet when he
furnishes evidence which convinces the jury that he has
exercised ordinary and reasonable skill and caution under
all the circumstances of the case, and that he has been
guilty of no negligence, he discharges himself from liabil-
ity and rebuts the *prima facie* presumption arising from the
overturning of the coach.    Such presumption is based on
the fact that the owner furnishes the coach and puts his

driver in the management of the team, and the overturning of the coach, in the absence of other explanation, indicates and tends to prove negligence. That there is such overturning is a fact from which the jury may infer negligence. Le Baron v. East Boston Ferry Co., 11 Allen, 312; Kearney v. London, 5 L. R. Q. B. 411; Mullen v. St. John, 57 N. Y. 567; I. C. R. R. Co. v. Phillips, 49 Ill. 234.

The fourth instruction given to the jury at the request of the plaintiff was as follows: " The jury are instructed that it was the duty of the defendant to furnish in addition to a suitable and sufficient conveyance a fully competent, careful and trustworthy driver, who was well acquainted with the road, and if the defendant neglected to do so and by reason thereof any injury resulted to the plaintiff, the jury must find for the plaintiff." This instruction was also erroneous, and required the same qualifications in a driver of a coach let under the circumstances of this case as are required in the driver furnished by a proprietor of a public line of stage coaches plying regularly from point to point as a public carrier of passengers and over a regular stage road. In such cases there is reason for requiring that the driver shall not only be competent and skillful, but well acquainted with the road over which the stage line contracts to carry its passengers; but there is no reason for requiring such a qualification from the driver of a team and coach let to convey a load of passengers to a given locality by such routes and over such roads as the hirer may, from time to time during the progress of the journey, suggest. All that can be required in such cases is that the driver shall be possessed of such skill and caution and experience as is usual and ordinary in persons exercising such calling in such special pursuit, and if in driving over roads the wheel of the vehicle sinks into a mud hole, of the existence of which the driver had no knowledge, and which by the exercise of such reasonable skill, caution and prudence he could not discover, and an injury results, his master or the proprietor of the vehicle and team should not be held liable. The evidence shows that prior to the excursion it had been

raining and there were many places in the unpaved streets where water stood in puddles; and to distinguish from the driver's seat between those which were shallow and those which were deep, might be very difficult and even impossible, and the best skill and care in driving on such a road might not avail to avoid an accident. There was evidence from which the jury might have found that the defendant had furnished a safe and suitable coach and suitable harness and horses—indeed, there was no evidence to the contrary—and that he had also furnished an experienced driver, who had been accustomed to driving coach teams and who was a careful and competent man, but there was no evidence and probably could be none that the driver was well acquainted with the roads over which the hirer directed him to drive. It follows then that while the jury may have believed that though the defendant had discharged to the full all that the law required of him, they were still bound to find a verdict against him because he did not furnish a driver well acquainted with the road. The question whether the driver exercised the care and skill in the management of the team and coach that prudent and cautious men experienced in that business are accustomed to use under similar circumstances, should have been left to the jury to determine.

It is unnecessary to discuss the various instructions given and refused by the court; enough had been said to show that the trial judge proceeded upon a theory that the utmost degree of diligence that could be required from a common carrier of passengers was the measure of appellant's responsibility. This view was erroneous, and the judgment must therefore be reversed and the case remanded.

*Reversed and remanded.*