SARAH L. STANLEY *vs.* HOWARD M. STEELE.

First Judicial District, Hartford, March Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A new trial may properly be granted where the trial judge, in deciding a material question in the case, misapprehends the purport of testimony, or treats as evidence something which in fact had no existence.

The rule of law which exacts the strictest and highest degree of diligence from a common carrier of passengers is not applicable to a mere livery-stable keeper whose business is to care for the horses and carriages of others, and to let his own horses and carriages either with or without drivers. It is enough if the latter has exhibited the same degree of skill, care and diligence that is usually exercised by persons of ordinary prudence in the conduct of such a business.

Argued March 7th—decided April 20th, 1905.

ACTION to recover damages for personal injuries caused by the alleged negligence of the defendant, brought to and tried by the Superior Court in Hartford County, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff for $750, and appeal by the defendant. *Error and new trial ordered.*

*William F. Henney* and *Henry C. Gussman,* for the appellant (defendant).

*John H. Kirkham* and *James E. Cooper*, for the appellee (plaintiff).

HALL, J. This is an appeal by the defendant from a judgment in favor of the plaintiff for $750, for injuries received by her from the overturning of a carriage hired of the defendant. The amended complaint alleges that the defendant was a livery-stable keeper; that he let to the plaintiff a carriage and a pair of horses with a driver; that the carriage and its appliances were defective, in that the pole, neck-yoke and pole-straps were of insufficient strength, and out of repair, and that the driver was incompetent; that the neck-yoke became detached from the collar of one of the horses, and the driver lost control of the team, and the pole broke, and the carriage was overturned; that the accident was caused by the unskillful handling of the horses, and by the failure of the defendant to exercise due and proper diligence in furnishing a safe driver and safe harnesses and appliances.

The facts showing the cause of the accident are these: A part of the harness or appliances furnished by the defendant was a neck-yoke, consisting of a wooden bar about three feet long, which, by a leather loop at the middle, is attached at right angles to the end of the carriage-pole. Fitted to each end of the neck-yoke is a metal cap or thimble, through a slot or opening on the surface of which a strap passes around the neck-yoke and is connected with the horse collar, and by this attachment to the pole the carriage is held back and turned. On the under side of each of said thimbles is a small hole, countersunk, for a screw to go through into the neck-yoke to prevent the thimble from slipping off. The head of the screw upon the right hand thimble was too small for the countersink, so that, when screwed down, the top of the screw-head was below the outer surface of the thimble and only the outer edge of the screw-head held the thimble. While driving down a slight grade a part of this screw-head broke off, the thimble slipped over the broken screw-head and off the neck-yoke, and the

pole was thereby let down, and the carriage coming against the horses, frightened them, and they ran away, throwing the plaintiff from the carriage and seriously injuring her.

It is claimed among the reasons of appeal, that the trial court, in deciding that the defendant was negligent in not having discovered the defect in the neck-yoke, which was the cause of the accident, erred in holding him to too high a degree of care, and also erred in finding and in refusing to find certain facts. A statement of the evidence and rulings in the case is made a part of the record, as provided by § 797 of the General Statutes.

Concerning this defect of the smallness of the screw-head in the thimble, the trial judge says in the finding: " A casual observer might not have seen it, but a person whose duty it was to exercise due care to see that the harness and carriage were in a safe condition, so that the security of his passengers might be preserved, would have seen it and ought to have seen it. Said defect was not hidden, but it was plain to be seen by the eye, and could have been by the defendant, who was present when said team was furnished the plaintiff, if he had used ordinary care in examining the equipment."

The finding states that " the defendant testified that had he noticed the screw he never would have used the yoke, while his foreman testified the screw was so small a blind man could see that."

As to the degree of care required of the defendant, the trial judge says in his finding: " *Hadley* v. *Cross*, 34 Vt. 586, states the rule which I adopt: ' In any business involving the personal safety and lives of others, what is due care, reasonable diligence? Clearly nothing less than the most watchful care and the most active diligence; anything short of this is negligence and carelessness, and would furnish clear ground of liability if an injury was thereby sustained.' "

An examination of the evidence shows that the plaintiff endeavored to prove at the trial that the defect in the neck-yoke was that the thimble which came off had not been

fastened to the neck-yoke at all, and that the plaintiff's witnesses who examined the neck-yoke after the accident, testified that there was no screw in the end of the neck-yoke where the thimble had come off. After the neck-yoke and thimble had been produced in court, showing the screw still in it and the broken screw-head, the court says that it had "grave doubts" whether that was really the yoke in question. It having been proven to be the yoke in use at the time of the accident, the case evidently turned upon the question of whether due care upon the part of the defendant required him to so carefully inspect the neck-yoke as to discover that the head of the screw, through the underside of the thimble, was so small as to be insufficient to hold the thimble on, and that the screw-head was liable to break and allow the thimble to slip over it and off the yoke. The defendant endeavored to prove that the pole and neck-yoke were new, were purchased by him from a reputable dealer, were examined by him in the usual and proper manner, and that such a slipping of the thimble from the neck-yoke was very unusual; and to prove by several witnesses, among whom was the defendant's foreman, that the defect in the fastening of the thimble was not discoverable upon an ordinary inspection of the neck-yoke. From the evidence before us upon this apparently controlling question in the case, the trial judge in deciding it evidently gave considerable weight to what he in effect says in the finding was the testimony of the defendant's foreman, namely, that the screw in the thimble was so small that any person who could see would have discovered the defect. It is conceded by the plaintiff's counsel, and it appears from the evidence before us, that the defendant's foreman did not so testify. On the contrary, it appears that he testified that the defect was not apparent upon inspection of the pole and yoke. The only witness who used language at all similar to that ascribed in the finding to the defendant's foreman was one Dunbar. He was called by the defendant to identify the neck-yoke produced in court as the one which he brought back to the stable after the accident. His remark on cross-examination,

after he had identified the yoke by the screw which was in it, " A blind man can see that," was evidently his statement of how readily any one could see the screw in the yoke after the accident, and contradicted the plaintiff's witnesses who asserted that there was no screw to be seen in the yoke when they examined it after the accident. When testifying as to the appearance of the yoke when it was put on to the carriage, this witness said there was nothing to indicate that the screw-head was too small for the countersink, and that such defect would not be seen. The trial court, therefore, erred in considering as evidence, in deciding a material question in the case, testimony which was not in fact given.

We are also of opinion that by the rule adopted the trial court held the defendant to too high a degree of care upon the question of whether he ought to have discovered the defect in the fastening of the thimble to the neck-yoke. In the case of common carriers of passengers, the highest degree of care which a reasonable and prudent man would use, in that business, is required. As to a common carrier of passengers by stage coach, this rule " applies alike to the character of the vehicle, the horses and harness, the skill and sobriety of the driver, and to the manner of conducting the stage, under every emergency or difficulty," and the stage-owner is held liable " for the smallest negligence in himself or his driver." *Derwort* v. *Loomer*, 21 Conn. 245, 253, 254; *Stokes* v. *Saltonstall*, 13 Peters (U. S.), 181.

*Hadley* v. *Cross*, 34 Vt. 586, referred to by the trial court as laying down the correct rule as to the degree of care required of the defendant, was an action against a livery-stable keeper for an injury caused by a defect in a wagon hired of the defendant; but the rule of diligence adopted in that case was that applicable to common carriers of passengers. The opinion states that it was conceded that the rule of duty and diligence to be applied was that applicable " to coach owners or other passenger carriers " who furnished drivers as well as teams; the plaintiff claiming that the defendant was liable for a defect which was not visible and

could not be discovered by the most careful examination, and the defendant that he was only liable for the want of due care. The court points out the difference between the liability of common carriers of passengers, and of goods, and says the former is only liable for the want of due care; but that that term when applied to carriers of passengers means the same as the terms extraordinary care, and the highest diligence, and cites as settling the law on the subject the case of *Ingalls* v. *Bills*, 9 Met. (Mass.) 1, which was an action against a common carrier of passengers.

But public carriers owe to their passengers a degree of care and protection which is not exacted of those who do not hold themselves out as serving the public in that capacity; 6 Cyc. 534; *Seaver* v. *Bradley*, 179 Mass. 329; and while the proprietors of stage-coaches, hacks and omnibuses, who hold themselves out to the public as general conveyers of passengers from place to place for hire with their own drivers, may be included in the class known as public or common carriers of passengers, livery-stable keepers whose business it is to care for the horses and carriages of others, and to let their own horses and carriages either with or without drivers, are not common carriers of passengers within the legal meaning of that term. Cooley on Torts, 638; *Payne* v. *Halstead*, 44 Ill. App. 97; *Siegrist* v. *Arnot*, 86 Mo. 200; *Erickson* v. *Barber Bros.*, 83 Iowa, 367; *Copeland* v. *Draper*, 157 Mass. 558. By merely carrying on such a livery-stable business the proprietors of it do not hold themselves out as undertaking for hire to carry indiscriminately any persons who may apply, either to certain places or to such places as they may desire to be carried. Furthermore, those who hire carriages from livery-stable keepers are not necessarily conveyed by the vehicles, horses and drivers chosen by the proprietor, but may in a measure protect themselves by selecting the particular carriage, horse and driver they wish to hire. The rule of law which requires " the strictest and highest degree of diligence of a public carrier of passengers " is not applicable to a mere livery-stable keeper. " Such livery stable keeper," says the

court in *Payne* v. *Halstead*, 44 Ill. App. 97, 102, "is not a common carrier of passengers, and does not assume the duties and obligations of such a carrier. He is at most a private carrier for hire. . . . Such a one undertakes to possess the skill adequate to the undertaking, and promises to exercise due diligence and care in its performance, but ordinary skill, diligence and prudence are all that the law exacts from him. . . . The highest degree of diligence is the rule as to public carriers of passengers, and public policy forbids its relaxation ; but a private carrier for hire may discharge himself from liability for accident by showing that he exercised the usual skill, care and diligence ordinarily exercised by those engaged in the same pursuit, to furnish a safe coach, harness and horses, and a competent and careful driver."

In determining, in the present case, the question of the liability of the defendant for the accident resulting from the defective fastening of the thimble to the neck-yoke, the proper inquiry was, was such defect discoverable by the defendant by the exercise of ordinary care, that is, by such care as is usually exercised by persons of ordinary prudence in the conduct of such livery-stable business ?

There is error and a new trial is ordered.

In this opinion the other judges concurred.