514    APPELLATE COURTS OF ILLINOIS.

Rathbun v. Ocean Acc. & Guar. Corp., Ltd., 219 Ill. App. 514.

## Mabel Rathbun, Appellee, v. Ocean Accident and Guarantee Corporation, Limited, Appellant.

1. CARRIERS, § 3*—*who are common carriers.* Distinction between a common carrier and private carrier defined.

2. CARRIERS, § 7*—*liverymen as common carriers.* Liverymen are not common carriers.

3. LIVERY STABLE KEEPERS, § 1*—*right of livery stable keeper to lien.* Livery stable keepers have not, like innkeepers, a lien upon live stock left with them for compensation for keep.

4. CARRIERS, § 7*—*proprietors of taxicabs, hacks, etc., as common carriers.* Proprietors of taxicabs, stagecoaches, hacks and omnibuses are common carriers.

5. CARRIERS, § 3*—*when question of person being common carrier is for jury.* Whether or not partners carrying on a taxicab business were common carriers was a question of fact for the jury.

6. APPEAL AND ERROR, § 1392*—*what will be considered on appeal from directed verdict.* In passing on the question whether the trial court, in an action on an accident insurance policy, erred in denying appellant's motion to direct a verdict for single indemnity, the Appellate Court did not weigh the evidence but determined whether or not there was any evidence fairly tending to support plaintiff's case.

7. TRIAL, § 60*—*when sufficiency of evidence is question of law.* The question whether there is any evidence fairly tending to support plaintiff's cause of action is one of law.

8. CARRIERS, § 7*—*when evidence establishes business as that of common carrier.* Evidence, in an action against an accident insurance company for double indemnity, for the death of plaintiff's intestate in a collision between a street car and the automobile in which he was riding and which he had hired from a partnership carrying on a taxicab business, fairly tended to prove that such partnership held itself out as an undertaking for hire to carry indiscriminately all persons applying and offering to pay their charges, and placed it in the same class as coachmen, hackmen and omnibus drivers, and it therefore was a common carrier.

9. CARRIERS, § 3*—*how carriers are defined.* In defining the status of common carriers, the word "public" does not mean everybody all the time.

10. APPEAL AND ERROR, § 1402*—*what court will determine as to evidence on appeal.* Whether the evidence is clearly and mani-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

festly against the weight of the evidence is a question of fact which, if properly presented, it is the duty of the Appellate Court to determine.

Appeal from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed October 27, 1920.

H. M. STEELY and H. M. STEELY, JR., for appellant.

ACTON & ACTON, for appellee.

MR. PRESIDING JUSTICE WAGGONER delivered the opinion of the court.

Mabel Rathbun brought an action in assumpsit on an insurance policy issued by the Ocean Accident and Guarantee Corporation, Limited, for the death of her husband, Dr. James Corbett Rathbun. The amount of the policy, under three different provisions contained therein, is $6,000. The policy contains a provision for double that amount if the injuries sustained are while the insured is a passenger in or on a public conveyance (including the platform, steps or running board thereof) or in a public cab provided by a common carrier for passenger service. Appellant admits liability for single indemnity, under the evidence in the case, but denies that it is liable for double indemnity. The judgment was for double indemnity (including interest), $12,350, and the insurance company appealed.

The deceased met his death November 12, 1918, while riding in an automobile belonging to Rayle Brothers. It was stipulated, on the trial, that he was accidentally killed in a collision between the automobile, in which he was riding, and an interurban car at the Batestown crossing about three miles west from Danville. On the afternoon of that day Dr. Rathbun received a call to go to Missionfield, six miles west from Danville, to see a patient. He telephoned Rayle Brothers to send an automobile and driver to his office. When the car

516    APPELLATE COURTS OF ILLINOIS.

Rathbun v. Ocean Acc. & Guar. Corp., Ltd., 219 Ill. App. 514.

came he got in, with the driver, started for Mission-field, and on the way to that place the collision occurred and Dr. Rathbun was killed. The question, presented in this case, is was the deceased a passenger in or on a public conveyance or in a public cab provided by a common carrier for passenger service?

Appellant contends that Rayle Brothers were not common carriers but merely private carriers for hire like liverymen; and that the automobile in which Dr. Rathbun was riding was on that trip his private conveyance for use in his private business under a special contract, namely, his call and the delivery of the conveyance and driver into his charge to go where he wanted it to; to stop when, where and as often as he desired; to take with him whoever he saw fit without extra charge; to stay out as long as he wanted and return whenever he got ready to do so. In other words, that he was a bailee for hire and the bailors had no control of the automobile until surrendered to them nor of the driver.

It is the contention of appellee that Rayle Brothers were engaged in business as common carriers for hire, held themselves out as such, and that Dr. Rathbun at the time of the accident was a passenger for hire in a public conveyance or cab operated by Rayle Brothers for passenger service.

"A common carrier is one who undertakes for hire to transport from place to place the goods of such as choose to employ him." (*Kenna v. Calumet, H. & S. E. R. Co.,* 284 Ill. 301, 305, 18 N. C. C. A. 671; *Illinois Cent. R. Co. v. Frankenberg,* 54 Ill. 88, 95.) A common carrier of passengers has been defined as "one who undertakes for hire to carry all persons indifferently who may apply for passage, so long as there is room and there is no legal excuse for refusing." 4 R. C. L. p. 1000. "The authorities recognize two classes of carriers, viz., private carriers and common carriers. All persons who undertake for hire, to carry the goods

of another, belong to one or the other of those classes. The former, like ordinary bailees for hire, are liable only for the injury or loss of the goods intrusted to them when it results from the failure of themselves or their servants to exercise ordinary care. The latter are liable as insurers for all injury or loss not resulting from the act of God or of the public enemy. The former are not bound to carry for any reason unless they enter into a special agreement to do so. The latter are bound to carry for all who offer such goods as they are accustomed to carry and tender reasonable compensation for carrying them; and if they refuse to perform their obligation in this respect, they are liable to respond in damages." 4 R. C. L. pp. 549-550. "The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently; and hence he is regarded, in some respects, as a public servant. In order to impress upon one the character and impose upon him the liabilities of a common carrier, his conduct must amount to a public offer to carry for all who tender him such goods as he is accustomed to carry. The definition has not always been thus restricted, but the law applicable to common carriers is peculiarly rigorous, and it ought not to be extended to persons who have not expressly assumed that character, or by their conduct and from the nature of their business justified the belief on the part of the public that they intended to assume it. No special contract with a common carrier is necessary to subject him to all the liabilities as such to the person applying; because the undertaking of a common carrier is general and embraces every one in the community, and to make it particular as an undertaking with a single individual it is necessary only to apply with the goods to the carrier." 4 R. C. L. pp. 546-547. "Every common carrier has the right to determine what particular line of business he will follow. If he elects to carry freight only, he will be under no obli-

518     Appellate Courts of Illinois.

Rathbun v. Ocean Acc. & Guar. Corp., Ltd., 219 Ill. App. 514.

gation to carry passengers, and vice versa; so if he holds himself out as a carrier of a particular kind of freight generally, prepared for carriage in a particular way, he will only be bound to carry to the extent and in the manner proposed." 4 R. C. L. p. 551.

Appellant claims that Rayle Brothers were merely private carriers like liverymen. It has been held that a livery stable keeper is not a common carrier of passengers and does not assume the duties and obligations of such a carrier. (*Payne v. Halstead,* 44 Ill. App. 97; *City of Havana v. Vanlaningham,* 17 Ill. App. 62.) The authorities generally hold that livery stable keepers lack one of the essential qualities of a common carrier, that is, a readiness to carry any and all persons who apply, offer to pay the charges of the carrier and comply with its regulations. (Note in 2 Anno. Cases, p. 344.) The court in *Stanley v. Steele,* 77 Conn. 688, said: "While the proprietors of stagecoaches, hacks and omnibuses, who hold themselves out to the public as general conveyors of passengers from place to place for hire with their own drivers, may be included in the class known as public or common carriers of passengers, livery stable keepers, whose business it is to care for the horses and carriages of others * * * either with or without drivers, are not common carriers of passengers, within the legal meaning of that term. Cooley on Torts, sec. 638; *Payne v. Halstead,* 44 Ill. App. 97; *Siegrist v. Arnot,* 86 Mo. 200; *Erickson v. Barber,* 83 Iowa 367; *Copeland v. Draper,* 157 Mass. 558. By merely carrying on such a livery stable business the proprietors of it do not hold themselves out as undertaking, for hire, to carry indiscriminately any persons who may apply, either to certain places or to such places as they may desire to be carried to. Furthermore, those who hire carriages from livery stable keepers are not necessarily conveyed by the vehicles, horses and drivers chosen by the proprietor, but may,

in a measure, protect themselves by selecting the particular carriage, horse and driver they wish to hire. The rule of law which requires 'the strictest and highest degree of diligence of a public carrier of passengers' is not applicable to a mere livery stable keeper. 'Such livery stable keeper,' says the court in *Payne v. Halstead*, 44 Ill. App. 97, 102, 'is not a common carrier of passengers, and does not assume the duties and obligations of such a carrier. He is at most a private carrier for hire. * * * Such a one undertakes to possess the skill adequate to the undertaking, and promises to exercise due diligence and care in its performance, but ordinary skill, diligence and prudence are all that the law exacts from him. * * * The highest degree of diligence is the rule as to public carriers of passengers, and public policy forbids its relaxation; but a private carrier for hire may discharge himself from liability for accident by showing that he exercised the usual skill, care and diligence ordinarily exercised by those engaged in the same pursuit, to furnish a safe coach, harness and horses, and a competent and careful driver.' ''

Livery stable keepers have no lien at common law upon the live stock left with them for compensation for keep, and they are less fortunate in this particular than innkeepers who at common law are entitled to a lien upon the live stock intrusted to their keeping by a guest. The reason given for thus distinguishing liverymen from innkeepers is that the latter are required to offer accommodations to persons generally and to care for their horses and other live stock during the period their owner remains as a guest of the innkeeper. And furthermore, the innkeeper is answerable for the goods of the guest although they may be stolen or lost without any fault on his part. 17 R. C. L. p. 1046.

The proprietors of stagecoaches, hacks and omni-

buses are common carriers. *Parmele*  *v. Lowitz,* 74 Ill. 116; *Stanley v. Steele,* 77 Conn. 688.

In the case of *Terminal Taxicab Co. v. Kutz,* 241 U. S. 252, the court in discussing whether the plaintiff, in furnishing automobiles from its central garage on orders generally by telephone, was a common carrier and subject to regulations as a public utility said: "Although I have not been able to free my mind from doubt, the court is of opinion that this part of the business is not to be regarded as a public utility. It is true that all business, and, for the matter of that, every life in all its details, has a public aspect, some bearing upon the welfare of the community in which it is passed. But, however it may have been in earlier days as to the common callings, it is assumed in our time that an invitation to the public to buy does not necessarily entail an obligation to sell. It is assumed that an ordinary shopkeeper may refuse his wares arbitrarily to a customer whom he dislikes, and although that consideration is not conclusive (*German Alliance Ins. Co. v. Lewis,* 233 U. S. 389, 407), it is assumed that such a calling is not public as the word is used. In the absence of clear language to the contrary it would be assumed that an ordinary livery stable stood on the same footing as a common shop, and there seems to be no difference between the plaintiff's service from its garage and that of a livery stable."

In the case of *City of Chicago v. Kluever,* 257 Ill. 317, 319-320, the question of whether an auto livery company was a common carrier was raised but not decided. There is no doubt, under the authorities, jitney bus proprietors are common carriers of passengers and this is clearly right on principle. (Notes Anno. Cases 1917C, pages 1051 and 1060.) It is likewise clear, under the authorities and on principle, taxicab proprietors are common carriers. *Boland v. Gay,* 201 Ill. App. 359; *Todd v. Chicago City Ry. Co.,* 197 Ill. App. 544; Note Anno. Cases 1916B, p. 767;

*Terminal Taxicab Co. v. Kutz,* 241 U. S. 252; Anno. Cases 1916D, p. 765; *Carlton v. Boudar,* 118 Va. 521; 4 Amer. Law Reports 480 and notes on pages 1499 and 1509.

Rayle Brothers was a partnership, consisting of James, Alfred and Asa Rayle. Their place of business was at No. 18 Franklin St., and on its front was a sign "Rayle Brothers, Garage and Storage, Telephone 525." Their letterheads and billheads read, "Rayle Brothers, Auto Livery, Storage and Washing." They advertised as "Rayle Brothers, Taxi, Telephone No. 1964." Their advertisement stated "always at your service." They applied to the city clerk of Danville and received a license to run a taxicab. The evidence shows they had six cars that were used in their business and that each of the brothers had a private car which was used with the other six at funerals, and that nearly half their business was furnishing cars at funerals. They had in their employ five or six drivers. The drivers drove in turns except where the call was for a particular driver. The business all came through the office at their place of business, by persons coming there or calling by telephone. They had no cab stands around the city, made no regular trips to depots or hotels, their employees were instructed to solicit no business outside, and to pick up no passengers at depots, hotels or elsewhere outside the place of business. They made no call for less than fifty cents, and charged seventy-five cents from a hotel to a depot. There were a few trips outside of town for which there was a usual charge, but the charges varied with weather and condition of roads. When a car was hired, the person hiring it controlled and directed where it should go, the route to be taken, and how many should go with him. If the caller took others with him, it cost no more as he had hired the car. They would hire a vehicle and driver to any one who

was sober and decent, if the roads and weather were so they could go.

Whether or not Rayle Brothers were a common carrier was a question of fact to be passed on by the jury under proper instructions. *Bare v. American Forwarding Co.*, 242 Ill. 298, 300; *Hinchliffe v. Wenig Teaming Co.*, 274 Ill. 417, 422.

In passing on the question of whether the trial court erred in denying appellant's motion to direct a verdict for single indemnity, this court does not weigh the evidence but only determines whether or not there is any evidence fairly tending to support plaintiff's cause of action. *Balsewicz v. Chicago, B. & Q. R. Co.*, 240 Ill. 238, 244; *Chenoweth v. Burr*, 242 Ill. 312, 317.

Whether there was any evidence fairly tending to support the appellee's cause of action is a question of law. (*Voigt v. Anglo-American Provision Co.*, 202 Ill. 462, 465; *Reiter v. Standard Scale & Supply Co.*, 237 Ill. 374, 380.) We find that there is evidence in the record fairly tending to prove that Rayle Brothers held themselves out as undertaking for hire to carry indiscriminately all persons applying and offering to pay their charges, which differentiates them from livery stable keepers and places them in the same class as coachmen, hackmen and omnibus drivers.

It is claimed that on the trip in question Dr. Rathbun controlled the automobile and for that reason it was a private bailment. If his control of the automobile is material, it would be sufficient to say that the evidence relative to his driving the car was directly conflicting and presented a question for the jury to determine. As was said in *Terminal Taxicab Co. v. Kutz*, 241 U. S. 253: "It may be assumed that a person taking a taxicab at the station would control the whole vehicle both as to contents, direction and time of use, although not, so far as indicated, in such a sense as to make the driver of the machine his servant, according to familiar distinctions. The last facts, however, ap-

pear to be immaterial and in no degree to cast doubt upon the plaintiff's taxicabs, when employed as above stated, being a public utility by ancient usage and understanding (*Munn v. Illinois,* 94 U. S. 113, 125), as well as common carriers by the manifest meaning of the act." The contention that Rayle Brothers limited their business and did not purport to serve all the public is without force. No common carrier serves all the public. His customers are limited by place, requirements, ability to pay and other facts. The public does not mean everybody all the time. *Terminal Taxicab Co. v. Kutz,* 241 U. S. 252.

Whether the verdict is clearly and manifestly against the weight of the evidence is a question of fact which, being properly presented, it is our duty to determine. (*Illinois Cent. R. Co. v. Smith,* 208 Ill. 608, 620.) We have carefully weighed the evidence in the record and not only cannot say the verdict is against the weight of it, but believe the verdict is supported by the evidence.

We have considered all the errors presented relative to the admission and exclusion of evidence, the argument of counsel and the instructions, and finding no reversible error therein the judgment of the circuit court will be affirmed.

*Judgment affirmed.*