374     APPELLATE COURTS OF ILLINOIS.

Rathbun v. Ocean Acc. & Guar. Corp., 231 Ill. App. 374.

## Mabel Rathbun, Appellee, v. Ocean Accident & Guarantee Corporation, Limited, of London, England, Appellant.

### Gen. No. 7,603.

1. APPEAL AND ERROR—*opinion on former appeal as law of case as to facts on retrial.* On a second appeal of a cause after retrial following a reversal by the Supreme Court on a former appeal, the opinion of that court is binding only where the same state of facts or an analogous state of facts is presented by the record, but the Appellate Court may examine the statement of facts in the former opinion and the principles of law thereto applied for the purpose of determining whether the facts in the present case are so analogous as to make the statement of law in the former appeal applicable.

2. APPEAL AND ERROR—*when opinion on former appeal binding on subsequent appeal.* The opinion of the Supreme Court on a former appeal of the same cause, deciding that the taxicab in which decedent was riding at the time of his death was not being operated as a common carriage for passengers within the meaning of a double indemnity clause in the insurance policy in suit, is binding upon the Appellate Court on a second appeal after retrial, where the facts on the second trial are analogous to those on the former trial and tend to make it clearer that, although the proprietors of the taxicab in question were engaged in the business of common carriers of passengers, the cab in question was furnished to decedent, a physician making a professional call, pursuant to a special contract for service identical with that ordinarily rendered by liverymen in letting their conveyances to their patrons.

Appeal by defendant from the Circuit Court of Vermilion county; the Hon. WALTER BREWER, Judge, presiding. Heard in this court at the April term, 1923. Reversed with finding of facts. Opinion filed July 10, 1923. *Certiorari* denied by Supreme Court (making opinion final).

H. M. STEELY, H. M. STEELY, JR. and CASSELS, POTTER & GILBERT, for appellant; RALPH F. POTTER, of counsel.

ACTON, ACTON & SNYDER, for appellee.

MR. PRESIDING JUSTICE HEARD delivered the opinion of the court.

Appellee brought suit against appellant in assumpsit upon a policy of accident insurance, which insured James C. Rathbun, a physician, against accidental injuries or death in amounts aggregating $6,000, in which policy appellee was named as beneficiary in case of accidental death. The policy provided that the amounts specified "shall be doubled if such injuries are sustained while a passenger in or on a public conveyance (including the platform, steps or running board thereof), or in a public cab, provided by a common carrier for passenger service."

The declaration alleged that on November 12, 1918, James Corbett Rathbun, while a passenger in and on a public conveyance, to wit, a public taxicab, provided by Rayle Bros. as a common carrier for passenger service and while being carried by Rayle Bros. in said taxicab, then and there a common carrier and as a passenger for hire, was accidently killed.

A trial resulted in a judgment against the appellant under the double indemnity clause of the policy for $12,350. This judgment was appealed and affirmed by this court, the decision being reported in *Rathbun v. Ocean Accident & Guarantee Co.*, 219 Ill. App. 514. The case was taken by certiorari to the Supreme Court and the judgment reversed, the cause being remanded for further proceeding. The opinion is reported in *Rathbun v. Ocean Accident & Guarantee Co.*, 299 Ill. 562.

Prior to the second trial the appellant filed pleas of general issue, special pleas denying the right to double indemnity and a plea of tender. Under its plea of tender, appellant paid into court the sum of $7,077.65, which it was stipulated by the parties was the amount of single indemnity due under the policy together with interest and costs accrued to the date of the tender.

A second trial resulted in a judgment in favor of appellee against appellant for $14,306.66, from which judgment this appeal was taken.

It is contended by appellant that evidence is con-

clusive that under the terms of the policy sued upon, double indemnity could not be recovered and the limit of the defendant's indebtedness was the amount of the tender.

The deceased was accidently killed November 12, 1918, in a collision of the automobile in which he was riding and an interurban car at a road crossing about three miles west of Danville, Illinois. On the afternoon of that date he was called to go to Missionfield, a hamlet six miles west of Danville, to see a patient. He telephoned to Rayle Bros., a copartnership composed of James, Alfred and Asa Rayle, to send an automobile or taxi and driver to his office. Asa Rayle responded to this call with one of his firm's automobiles and he, Doctor Rathbun and another man by the name of Zilko, who lived in Missionfield, went in the car to the scene of the accident. Zilko was a caller on Dr. Rathbun at the office and was being taken home at the doctor's request. He had no connection with the garage company. All three occupants of the car were killed. The vital question in the case is whether or not at the time of his death Dr. Rathbun was a passenger in a public cab, provided by a common carrier for passenger service.

In its opinion the Supreme Court defined private and common carriers and differentiated between them as follows:

"Private carriers as ordinarily defined are those who, without being engaged in such business as a public employment, undertake to deliver goods or passengers in a particular case for hire or reward. (2 Pope's Legal Definitions 1236, citing *Pennewill v. Cullen*, 5 Harr. [Del.] 242; 10 Corpus Juris 38.) Hutchinson, in his work on carriers (2d ed., sec. 35), defines private carriers for hire as such as make no public profession that they will carry for all who apply, but who occasionally, or upon a particular occasion, undertake for compensation to carry upon such terms as may be agreed upon. A common carrier differs from a private carrier in two important re-

spects: (1) In respect of duty, it being obliged by law to undertake the charge of transportation, which none but a common carrier, without a special agreement, is; and (2) in respect of risk, the former being regarded by the law as an insurer, the latter being liable like ordinary bailees. (10 Corpus Juris 37.) Hence a common carrier of passengers has been defined as 'one who undertakes for hire to carry all persons indifferently who may apply for passage, so long as there is room and there is no legal excuse for refusal.' The holding by all of the authorities is, that to constitute one a common carrier it is necessary that he hold himself out as such by advertising or by actually engaging in the business and pursuing the occupation as an employment.

"Jitney-bus proprietors and owners of stagecoaches, hacks and omnibuses have generally been held to be common carriers. This is so because in their business they serve all the public alike who apply to them for carriage so long as they have room, and they are held common carriers regardless of the fact whether they operate in cities or from town to town or from city to city, so long as they maintain their status as public carriers, carrying all who apply and refusing none unless they have no room or for some other legal reason may refuse. It does not make any particular difference as to their being common carriers that their passengers may designate the way and the place to which the passengers may be carried, but after the carriages are entered by the passengers such carriers must necessarily have control and regulation of the passengers' conduct and of the operation of the carriages before they can be held to the extraordinary liability of common carriers to such passengers. Livery-stable keepers lack one of the essential qualifications,—a readiness to carry any and all persons who apply and offer to pay the charges of carriage and comply with the regulations. (*Parmelee v. Lowitz*, 74 Ill. 116; *Stanley v. Steele*, 77 Conn. 688, 2 Ann. Cas. 342.)"

After an extended review of the authorities of this and other States bearing upon the question and a care-

378    APPELLATE COURTS OF ILLINOIS.

Rathbun v. Ocean Acc. & Guar. Corp., 231 Ill. App. 374.

ful examination of facts in evidence, the court said: "While it is not stated in so many words, the clear inference in the record is that the service rendered by Rayle Bros. to Dr. Rathbun was by special con- tract, and that the service differed in no material way from the character of service ordinarily rendered by liverymen in letting teams and carriages to their pa- trons for trips into the country or from town to town. * * * We are unable to see that such services amounted to more than the ordinary services per- formed by livery-stable keepers."

It is strenuously urged by appellee that the state- ments in the opinion of the Supreme Court are not binding upon this court for the reason that the facts in the present case are entirely different from the facts on the former appeal. It is true that the prin- ciples of law announced by the Supreme Court upon a certain state of facts, in reversing, are not binding ex- cept upon the same state of facts or an analogous state of facts. The court is required to try a case brought before it on a second appeal, on the record presented in the particular case, and cannot look to the transcript of the record in a former case between the same parties on a former appeal to determine questions of fact. We can, however, examine the statement of facts in the former opinion and the state- ment of the court as to the law applicable to such facts for the purpose of determining whether the facts of the present case are so analogous to those of the former case that the statement of law applicable to those facts are applicable to the present facts.

From an examination of the facts in the present record with the facts stated in the opinion, we find that there is much evidence in the present record which was not given on the former trial and that as to some mat- ters as to which an inference favorable to appellant were drawn, such inference is disproven or becomes a disputed question of fact in the present record. Much evidence is given in the present record which shows

clearly that Rayle Bros., as to a portion of their business, were common carriers of passengers. The vital question in the case, however, is not whether Rayle Bros. were common carriers but whether or not, at the time of his death, Dr. Rathbun was a passenger in a public cab, provided by a common carrier for passenger service. The new evidence throws but little light upon this subject, but what little is thrown only tends to make it clearer that while Rayle Bros. were engaged in the business of common carriers of passengers, the automobile furnished him in this particular instance was not a "public cab provided by a common carrier for passenger service," within the meaning of the law. In the former opinion it was said: "There was another man in the car by the name of Zilko, who lived in Missionfield. It does not appear clearly from this record whether Zilko was a caller on Dr. Rathbun for medical services or was being taken home at the doctor's request." In the present case, Mrs. C. W. Tyler, who at the time of the accident was employed as Dr. Rathbun's assistant, testified with reference to Zilko: "I think he was there in the office to get some medicine for his children who had the flu at that time, and he was going out the door. Dr. Rathbun said, 'I am going to Missionfield, you might just as well come and drive along with me. I have hired a taxi and you can go right along.' The doctor and Zilko left the office together about three o'clock in the afternoon." The accident happened about 3:18. This evidence would clearly tend to show that "the service rendered by Rayle Bros. to Dr. Rathbun was by special contract, and * * * differed in no material way from the character of service ordinarily rendered by liverymen in letting teams and carriages to their patrons for trips into the country or from town to town."

We are of the opinion that the evidence in the case fails to prove that appellee was entitled to the double indemnity and that the judgment of the circuit court

was erroneous.   The judgment is therefore reversed.

*Reversed with finding of facts.*

Finding of facts.   We find that at the time of his death Dr. James Corbett Rathbun was not a passenger in a public cab provided by a common carrier for passenger service.