DAVID E. CURRIE vs. THE CONSOLIDATED RAILWAY
COMPANY.

Third Judicial District, Bridgeport, October Term, 1908.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

In an action for negligence against a street-railway company for run-
ning down and wrecking the plaintiff's carriage at night on a
country road, the parties were at issue, among other things, in
respect to the rate of speed of the defendant's car, and also as to
whether it carried a sufficient headlight to enable the motorman
to see far enough ahead to do whatever ordinary care might re-
quire to avoid a rear-end collision with another vehicle upon the
railway track. *Held* that in connection with evidence tending to
show that the single bulb incandescent light in question illuminated
the track for a distance of only twenty-five or thirty feet, testi-
mony on the part of the plaintiff was relevant to show that for
long prior to the date of the accident search-lights of considerable
illuminating power had been in common and approved use on
such railways and had proved satisfactory.
The speed at which an electric car, or indeed any vehicle, can properly
be driven over a highway at night, must be determined partly in
view of the distance ahead at which travelers upon or approach-
ing the same highway would become visible.
A street-railway company, running a car at night on a country road,
is bound to give reasonable warning of its approach by proper
signals to any who are or may reasonably be expected at that
hour to be ahead of the car on the railway tracks or traveling on
the highway.
It is fairly within the discretion of the trial court to exclude a question
asked of a nonexpert witness who had made observations for that
purpose, as to how far one on the front seat or platform of a
trolley-car could see ahead in the night, if the candle power of
the headlight on such car is not stated in the question.
A request by the plaintiff to be allowed to recall and further examine
a witness after he has rested his case and the trial court has an-
nounced its intention to grant a motion of the defendant to direct
a verdict in his favor, comes at so late a stage that its denial is
well within the court's discretion.
A verdict should be directed for a defendant only when the evidence
for the plaintiff is so weak that if a verdict were rendered in his
favor it would be proper to set it aside.
The evidence in the present case reviewed and *held* to be sufficient,

in connection with that which was erroneously excluded, to require the submission of the case to the jury.

The negligence of a bailee of an article for hire is not to be imputed to its owner, in an action by the latter against a third person for its negligent destruction.

Argued October 29th—decided December 18th, 1908.

ACTION for a negligent collision with a carriage on the highway, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Bennett, J.;* verdict for the defendant, by direction of the court. *Error and new trial ordered.*

*George E. Beers* and *Frank S. Bishop,* for the appellant (plaintiff).

*Harry G. Day* and *Thomas M. Steele,* for the appellee (defendant).

BALDWIN, C. J. The plaintiff introduced evidence tending to prove these facts:—

He keeps a livery-stable in New Haven, and one Munson had been in his employ for a year or two as a driver of a coupé. About two o'clock on April 26th, 1906, Munson hired from the stable a light "runabout" wagon containing but one seat, to which he hitched one of the plaintiff's horses, and drove off. About nine hours later the wagon was struck in the rear and wrecked by an electric car of the defendant. The place of the collision was on Dixwell Avenue, about four miles from the center of the city in a comparatively thinly settled part of Hamden. The Avenue at this place was level, and ran straight north and south for a considerable distance in each direction. The middle was macadamized for a width of nineteen feet. West of this came a strip sixteen feet wide on which some grass was growing. Immediately east of it was the single track railway of the defendant. The car was a long and heavy one, equipped with air brakes, and having

a single bulb incandescent electric headlight which enabled the motorman to see an object in front for a distance of but about twenty-five or thirty feet. There were no passengers on board. No gong was sounded before the collision. That was attended by a loud crash. The night was a clear, starlight one. When the car was brought to a stop after the collision, Munson's body lay bleeding on the macadam pavement, and ten or twelve feet west of the middle of the car. The horse had disappeared. There were impressions on the earth between the railway tracks indicating that the wagon had been driven northward for a distance of about one hundred and thirty feet with its right wheel half way between the rails, before reaching the point where the collision took place. The pressure of air in the brakes of the car was about sixty or seventy pounds.

One of the plaintiff's witnesses was Alexander Cahn, a civil engineer, who testified that he had had experience in the construction and equipment of electric railways. He was then asked questions adapted to bring out answers to the effect that, long prior to the date of the accident, search-lights of considerable illuminating power had been in use on such railways and proved satisfactory, and their use and value were generally known and understood by those interested in the equipment of railroads. These questions were put in connection with the claim that the defendant had been negligent in not equipping such of its cars as were to be run at night on country roads with search-lights of that description. They were excluded, and error is well assigned upon that ruling.

In the complaint negligence was charged, among other things, in giving no signal of the approach of the car; in running at an excessive rate of speed; in not having a "headlight of suitable illuminating power for the character of the road on which said car was operated"; in not maintaining a proper look-out; and in not stopping the car sooner. These averments were denied.

The use of a highway for electric street-cars imposes no new servitude upon the soil. It is simply a new form of the original use. The owner of the car, in running it, is therefore governed by the same rules which apply to the management of any other vehicles. Being of greater size and weight than they commonly are, and capable of being moved at a very high rate of speed, the car must, at all times, be kept so well in hand as not to expose others to unreasonable hazard. *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475, 37 L. R. A. 533, 37 Atl. 379. When running at night, it must be provided with such means of illumination as may be requisite, in connection with the light, if any, to be expected from other sources, to enable the motorman to see far enough ahead to do whatever ordinary care may demand in order to avoid a rear-end collision with any other vehicle upon the railway track. See Joyce on Electric Law (2d Ed.) § 463. The speed at which any vehicle can be driven over a highway at night must be determined partly in view of the distance ahead at which travelers upon or approaching the same highway would become visible.

It was therefore material for the plaintiff to show, if he could, that the headlight on the defendant's car was insufficient. The testimony which he sought to introduce from Cahn would have been relevant to that point. 1 Wigm. on Ev. § 461. A street-railway company is not necessarily bound, as respects other travelers, to equip its cars with a particular kind of light, known, used, and approved by those engaged in conducting the same business, under like conditions. It may be using one that is much better. But evidence of what they commonly do and approve in that respect has a legitimate and not unimportant tendency to show that ordinary care would call for its conformity to an established practice.

. Another witness having testified that he had frequently made observations to ascertain how far one on the front

Currie *v.* Consolidated Ry. Co.

seat or platform of a trolley-car could see ahead on a clear, starlight night, when there was no moon and the headlight was a single incandescent bulb, was asked to state what that distance was. This question was excluded. It did not state the candle power of the bulb, and the witness was not an expert. Under these circumstances, this ruling was fairly within the discretion of the trial court.

If the testimony from Cahn had been admitted, and had proved to be such as the plaintiff claimed that he would give, there would have been sufficient evidence of the defendant's negligence to entitle him to go to the jury. He could then have insisted with some force that, if the car were proceeding at a high rate of speed, although the light cast upon objects in front, including that shining from the stars, made no objects visible which were more than thirty feet away, the company was negligent in not providing other means of illumination; while if, on the other hand, the rate of speed were so slow that, if a wagon were seen on the tracks thirty feet ahead, the car could have been stopped by the proper use of the brakes within that thirty feet, it was for the jury to say whether it ought not to have been so stopped; and if by the aid of the starlight the plaintiff's wagon could have been seen for a distance of much more than thirty feet, it was for them to say whether the car could not, by proper effort, have been brought to a stand before traversing this greater distance. Whatever the rate of speed, it was also the duty of the company to give reasonable warning of its approach by proper signals, to any who were or might reasonably be expected, at that hour, to be ahead of the car on the railway tracks or travelers on the Avenue. If the motorman saw the plaintiff's wagon before it was struck, or ought to have seen it, in time to sound the gong, and if, had it been sounded, Munson's attention would probably have been attracted in time to turn off from the tracks, this was a matter for the jury to consider in determining whether, under all the circumstances, reasonable

care had been exercised by the defendant, since there was evidence that no such signal was given.

The defendant offered no evidence, but moved for a direction to the jury to return a verdict in its favor. This motion having been argued by counsel for both parties, and the court having announced its intention to grant it, the plaintiff asked and was denied leave to recall the motorman, whom he had already examined as a witness but only as to certain points, for further examination.

This request came at so late a stage of the cause that its denial was well within the discretion of the trial court.

The jury were then instructed to return a verdict for the defendant, because (1) the plaintiff had not made out proof of its negligence, nor (2) disproved contributory negligence on his own part.

Had the testimony of Cahn been received, there would have been, as above stated, sufficient prima facie evidence of the defendant's negligence to require the submission of the cause to the jury for its decision. A verdict should be directed for a defendant only when the evidence for the plaintiff is so weak that if a verdict were rendered in his favor it would be proper to set it aside. *Bradbury* v. *South Norwalk*, 80 Conn. 298, 300, 68 Atl. 321. The error assigned in excluding the questions put to Cahn, therefore, requires a new trial, and it is unnecessary to inquire whether, in view of their exclusion, the charge on this point was correct.

As respects the second point, there was nothing in evidence to show or to raise a presumption of contributory negligence on the part of the plaintiff.

He had let the wagon which was injured by the collision to an experienced driver. While it is true that the latter was in the plaintiff's regular employ, the only evidence as to how he came in possession of it was that he took it away, not as a servant, but as a bailee under a contract of hire. If chargeable with negligence, therefore, the court was not warranted in imputing it to the plaintiff. *Little* v. *Hackett,*

116 U. S. 366, 371, 6 Sup. Ct. Rep. 391; *Robinson* v. *New York C. & H. R. R. Co.*, 66 N. Y. 11.

There.is error and a new trial is ordered.

In this opinion the other judges concurred.