RONALD BORRELLI ET AL. *v.* ZONING BOARD OF APPEALS OF THE CITY OF MIDDLETOWN ET AL.
(AC 27222)

Flynn, C. J., and Lavery and West, Js.

Argued November 13, 2007—officially released March 11, 2008

*J. Michael Sulzbach,* for the appellants (plaintiffs).

*Timothy P. Lynch,* deputy city attorney, for the appellee (named defendant).

*Richard D. Carella,* for the appellees (defendants Edward Hills III et al.).

FLYNN, C. J. The plaintiff landowners, Ronald Borrelli and Stephanie Borrelli, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant zoning board of appeals of the city of Middletown sustaining the Middletown zoning enforcement officer's finding that the horse boarding facility of the abutting landowners, defendants Edward Hills III and Andrea Lee Hills, does not violate the Middletown zoning regulations (regulations).[1] On appeal, the plaintiffs claim that the court improperly found that the individual defendants' boarding facility was not a livery stable despite the board's and the individual defendants' admissions in their answers that the operation was a "commercial horse boarding facility/livery stable," which constituted a binding judicial admissions or, alternatively, that the court improperly interpreted the regulations to allow horse boarding as a permitted agricultural use on the individual defendants' residentially zoned property. We affirm the judgment of the trial court.

The following facts are not in dispute. The plaintiffs are the owners of real property located at 836 Brooks Road in Middletown. The individual defendants own real property adjacent to the plaintiffs' property to the west, north and east. Both parcels of land are located in zone R-60, a residential zone.

In February, 2002, the plaintiffs complained to the Middletown zoning enforcement officer that their neighbors, the individual defendants, were operating a commercial horse boarding facility/livery stable, which the plaintiffs alleged was a permitted use only in commercial zones. To support their allegation, the plaintiffs

---

[1] For the remainder of this opinion the defendant Middletown zoning board of appeals will be referred to as the board and the defendants Edward Hills and Andrea Hills will be referred to as the individual defendants.

cited § 61.01.27 of the Middletown zoning regulations, which enumerates "livery stable" as among the permitted uses for commercial zones.[2] The zoning enforcement officer, however, concluded that the individual defendants' operation did not violate the zoning regulations. The plaintiffs appealed that decision to the board, which concluded that the individual defendants' operation fell within the R-60 permitted use of agriculture.

The plaintiffs appealed from the board's decision to the Superior Court, and the appeal was tried to the court on March 28, 2005. At trial, the plaintiffs argued that the individual defendants and the board both had admitted in their answers to the plaintiffs' complaint that the individual defendants' operation was a "livery stable" and that they were bound by such admission. The individual defendants denied having made a binding judicial admission. At the conclusion of the trial, the court upheld the board's decision and dismissed the appeal. The plaintiffs filed a petition for certification to appeal to this court, which we granted, and this appeal followed.

On appeal, the plaintiffs claim that the admission that the individual defendants' operation is a "commercial horse boarding facility/livery stable" is a binding judicial admission that is conclusive. Accordingly, the plaintiffs suggest that a reasonable interpretation of § 61.01.27 of the Middletown zoning regulations thus precludes the individual defendants from operating such a facility in a residential zone. We do not agree.

---

[2] Section 61.01.27 of the Middletown zoning regulations provides for the following permitted uses in business zones, industrial zones and other non-residential zones: "Recreation (commercial)—including baseball field[s], swimming pools, skating rinks, golf driving ranges, stadiums or arenas and similar open air facilities, *livery stables or riding academies*, amusement parks, or similar recreational uses; provided such recreational establishments shall be at least two hundred (200) feet from any residential zone." (Emphasis added.)

Resolution of the plaintiffs' claim requires us to review and analyze the relevant zoning regulations. Our Supreme Court has stated that "[b]ecause the interpretation of the regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 416, 920 A.2d 1000 (2007). "Ordinarily, [appellate courts afford] deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698, 784 A.2d 354 (2001).

Regulations must be viewed to form a cohesive body of law, and they "must be construed as a whole and in such a way as to reconcile all their provisions as far as possible." (Internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 73 Conn. App. 442, 462, 807 A.2d 1089, cert. denied, 262 Conn. 928, 814 A.2d 379 (2002). This is true because "particular words or sections of the regulations, considered separately, may be lacking in precision of meaning to afford a standard sufficient to sustain them." (Internal quotation marks omitted.) Id.

"When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 657, 894 A.2d 285 (2006); *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 737–38, 563 A.2d 1347 (1989). "[W]e consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." (Internal quotation marks omitted.) *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, 237 Conn. 123, 130, 676 A.2d 369 (1996). With these standards as a guide, we commence our review by setting forth certain legal principles relating to judicial admissions.

"Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings." (Internal quotation marks omitted.) *Macy* v. *Lucas*, 72 Conn. App. 142, 153, 804 A.2d 971, cert. denied, 262 Conn. 905, 810 A.2d 272 (2002). "They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 71 Conn. App. 715, 742, 805 A.2d 76 (2002). It is well settled that "[f]actual allegations contained in pleadings upon which the cause is tried are considered judicial admissions and hence irrefutable as long as they remain in the case." (Internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, 201 Conn. 305, 312, 514 A.2d 734 (1986).

Nevertheless, judicial admissions, however binding upon the parties who made them, do not restrain this court's de novo interpretation of regulations. Admissions, whether judicial or evidentiary, are concessions of fact, not concessions of law. See generally C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.16.3. Thus, a

judicial admission, like a stipulation between parties, serves to inform, rather than to bind, the court's independent plenary determination of the pertinent zoning regulations. See *National Amusements, Inc.* v. *East Windsor*, 84 Conn. App. 473, 483, 854 A.2d 58 (2004).

A review of the pleadings further underscores the factual nature of the board's and the individual defendants' admissions. The plaintiffs' appeal to the trial court alleged in paragraph three that the individual defendants operate a "commercial horse boarding facility/livery stable on their property," and later, in paragraph eight, that such a use was not "authorized by the zoning regulations . . . ." In their answers, the individual defendants and the board admitted the allegation in paragraph three, but denied the allegation in paragraph eight that their operation was unauthorized by the regulations. Thus, the individual defendants did not admit that their facility was being maintained in violation of the regulations because paragraph three of the plaintiffs' complaint, which the individual defendants and the board admitted, did not make that allegation. Put another way, the board's and the individual defendants' admissions were not equivalent to a concession that the facility was unauthorized under the regulations. Rather, the board's and the individual defendants' admissions were limited to the factual assertion that the individual defendants run a "commercial horse boarding facility/livery stable."

Our further review of the individual defendants' answer admitting that they were operating a commercial horse boarding facility/livery stable leads us to the conclusion that the individual defendants did not admit that the definition of livery stable is synonymous with the phrase "commercial horse boarding facility" because the slash mark, or virgule, between "facility" and "livery" did not equate the two phrases. A virgule, rather than equating two terms, is used "to separate

alternatives"; American Heritage Dictionary of the English Language (4th Ed. 2000); its use indicates that whichever is appropriate may be chosen to complete the sense of the text in which it occurs. Random House Dictionary of the English Language (2d Ed. 1987). We, therefore, conclude that when the plaintiffs pleaded in paragraph three that the individual defendants were operating a "commercial horse boarding facility/livery stable," the effect of the virgule was to plead that the individual defendants were operating only one or both alternatives, and, consequently, an answer admitting that allegation was not an unequivocal admission. Our view is further fortified by the individual defendants' answer to paragraph eight, in which they expressly deny that their operation was unauthorized by the regulations. In the same vein, it also bears noting that the plaintiffs, rather than simply pleading that the individual defendants were operating a livery stable, chose instead to construct their pleading in a manner inviting ambiguity.

We next analyze whether the court's finding that the individual defendants were not operating a livery stable is clearly erroneous. In this case, the regulations do not include a definition of the term "livery stable," nor has this provision of the regulations previously been interpreted by the courts. Under such circumstances, the board's interpretation is not entitled to special deference because "[it] is for the courts, and not administrative agencies, to expound and apply governing principles of law." *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 698. The plaintiffs submitted a definition of livery stable from the Webster's Third College Edition of the New World Dictionary defining it as "a stable where horses and carriages can be had for hire *or* where horses are kept for a fixed charge." (Emphasis added.) We do not agree that this definition is the customary definition of livery stable or that this was the definition anticipated by the regulations.

The Oxford English Dictionary defines a livery stable as a "stable where horses are kept at livery, or are let out (with or without carriages) for hire." The Oxford English Dictionary further equates the usage "kept at livery" with "for hire, as *livery horse* . . . . " (Emphasis in original.) Similarly, the unabridged Webster's Third New International Dictionary defines livery stable as "a stable where horses and vehicles are kept for hire *and* where stabling is provided." (Emphasis added.) Importantly, the use of "and" in the unabridged Webster's dictionary, indicating that a livery stable requires both stabling and hiring of horses, is in contrast with the "or" construction found in the abridged college edition referenced by the plaintiffs.

References in the case law to livery stables and livery stable keepers at the time § 61.01.27 was promulgated in 1927 exemplify the Oxford English Dictionary and unabridged Webster's definitions cited. Namely, case law from that period demonstrates that keeping a livery stable business implicitly required the hiring out of horses or carriages or both. For example, several Connecticut cases from that period reference the livery stable keepers' duty of care in hiring out carriages and horses. See, e.g., *Duffy* v. *Bishop Co.*, 99 Conn. 573, 580, 122 A. 121 (1923) ("[t]he owner of a livery-stable is bound to furnish a safe carriage and a competent and safe driver"); *Stanley* v. *Steele*, 77 Conn. 688, 693, 60 A. 640 (1905) ("[t]he rule of law which requires the strictest and highest degree of diligence of a public carrier of passengers is not applicable to a mere livery-stable keeper" whose "business it is to care for the horses and carriages of others, *and to let their own horses and carriages either with or without drivers*" [emphasis added; internal quotation marks omitted]).[3]

---

[3] See also *Deming* v. *Johnson*, 80 Conn. 553, 554, 69 A. 347 (1908) ("[t]his is a suit against a livery-stable keeper by one who had hired a team from him, for injuries due to the insufficiency of the harness"); *Payne* v. *Halstead*, 44 Ill. App. 97, 102 (1892) ("[A] livery stable keeper is not a common carrier

Likewise, in *Currie* v. *Consolidated Railway Co.*, 81 Conn. 383, 384, 71 A. 356 (1908), which concerns an employee's theft of a wagon from a livery stable, the livery stable keeper's business involved hiring out horses, vehicles and drivers: "[The plaintiff] keeps a livery stable in New Haven, and [the defendant] had been in his employ for a year or two as a driver of a coupe." Id.[4]

The numerous definitions cited by this court, in addition to cases arising from the historical period in which § 61.01.27 was promulgated, all indicate that the term "livery stable" includes the hiring out of horses, in which the court found that the individual defendants in this case did not engage, not merely their boarding and tending for a fee, in which they did. Accordingly, we conclude that the definition under the regulations requires the same. As is apparent from the record and the findings of the trial court, no horses or carriages are hired out by the individual defendants. We therefore agree with the court that the individual defendants' horse boarding facility is not a livery stable under the regulations. Because there is no livery stable on the individual defendants' land, we further agree with the court that § 61.01.27, which enumerates the permitted recreational use of livery stable in commercial zones, is not applicable to the court's analysis of the case pursuant to the regulations governing the permitted uses for residential zone R-60.

Section 60.01.03 of the Middletown zoning regulations enumerates "farming or other agricultural uses" as

of passengers, and does not assume the duties and obligations of such a carrier. He is at most a private carrier for hire . . . .").

[4] An allusion also is made to the livery stable keeper's business of hiring out horses when referring to the oft quoted Hobson's choice: "It is named after the practice of Thomas Hobson (1544-1630), an English keeper of a livery stable whose practice was that customers could either take the horse nearest the stable door or none at all." American Heritage Dictionary of the English Language (4th Ed. 2000).

permitted within residential zone R-60. The regulations define agriculture as "[t]he use of land for agricultural purposes, including farming, dairying, pasturage, agriculture, horticulture, floriculture, viticulture, and animal and poultry husbandry and the necessary accessory uses for packing, treating or storing the produce; provided, however, that the operation of any such accessory uses shall be secondary to that of normal agricultural activities and provided further that the above uses shall not include the commercial feeding of garbage or offal to swine and other animals." Middletown Zoning Regs., § 16.01.02. The plaintiffs argue that the boarding of horses is not "merely 'animal husbandry'—it is a commercial operation involving the payment of rents by horse owners for the use of barn space and services provided to the owners and the animals." We agree with the court that the individual defendants' use of their property falls within the regulations' definition of "agriculture."[5]

The definition of agriculture in the regulations encompasses the individual defendants' use of their land. First, the individual defendants engage in animal husbandry, which is an agricultural purpose under the regulations' definition of agriculture. The unabridged Webster's Third New International Dictionary defines animal husbandry as "a branch of agriculture concerned with the production and care of domestic animals." According to a sample horse boarding contract, for a fee the individual defendants provide "a safe, clean stall, daily hay and grain, water, [and] daily turnout as

[5] The plaintiffs' argument that the individual defendants' operation is commercial in nature, and by extension somehow must fall under the commercial zone regulations, is irrelevant to our determination that it constitutes agriculture as defined in the regulations. With the exception of the plaintiffs' land, the area in question is a farming community. Agriculture and farming historically are commercial enterprises by which people make a living. That fact, however, has no bearing on the uses that constitute agriculture under the regulations.

weather and pasture permits." The care provided by the individual defendants further is reflected in Edward Hills' statement to the board that "[w]e feed [the horses] twice a day, we put them out and clear the stalls . . . ." The individual defendants' counsel also stated to the board that "[t]he [individual defendants] breed their own horses, in addition to offering a facility for other people to board horses. . . . They have their own animals. They raise their own animals . . . ." Pursuant to the Webster's definition, the individual defendants care for and produce, i.e., breed, horses thereby engaging in animal husbandry.

Second, the regulations do not restrictively define agriculture to the several enumerated uses but instead circularly define agriculture as "[t]he use of land for agricultural purposes, including . . . ." Middletown Zoning Regs., § 16.01.02. As the regulations' definition of agriculture is circular, rather than restricted and explicit, guidance from the General Statutes is appropriate in this instance.[6] General Statutes § 1-1 (q) provides in relevant part that "the words 'agriculture' and 'farming' shall include . . . the raising, shearing, feeding, caring for, training and management of livestock, including horses . . . ." Pursuant to this definition, the individual defendants' sheltering, feeding and pasturing of horses qualifies as agriculture and, therefore, as an agricultural purpose under the General Statutes.

On the basis of the foregoing, we agree with the court that the individual defendants' use of their property is

---

[6] This case is distinguishable from *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 691, in which our Supreme Court stated: "The General Statutes' definition of agriculture] is irrelevant for our purposes because the term 'agriculture' is expressly defined in [the local regulations]. We, therefore, must ascertain the meaning of the word 'agriculture' on the basis of the definition contained in [the local regulations] and not by reference to a statutory definition." Id., 705. Here, because the regulations' definition of agriculture is inexplicit and circular, rather than express, guidance from the General Statutes is appropriate.

a permitted agricultural use within the R-60 residential zone.

The judgment is affirmed.

In this opinion the other judges concurred.