O AND G INDUSTRIES, INC. *v.* ALL PHASE
ENTERPRISES, INC.
(AC 28982)

Flynn, C. J., and Bishop and Harper, Js.

Argued October 16, 2008—officially released February 10, 2009

*Regen O'Malley,* with whom was *Paul D. Meade,* for the appellant-appellee (defendant-third party plaintiff).

*William J. Tracy, Jr.,* for the appellee-appellant (third party defendant).

*Michael J. Donnelly* filed a brief for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The defendant-third party plaintiff, All Phase Enterprises, Inc. (All Phase), appeals from the judgment of the trial court, claiming that the court improperly failed to award full indemnity against the third party defendant, Connecticut Metal Siding, LLC (Metal Siding), for the attorney's fees that All Phase incurred in defense of the first party action filed against it and for the attorney's fees that it was ordered to reimburse to the plaintiff, O & G Industries, Inc. (O &

G).[1] All Phase also claims that the court improperly deducted from its indemnification award against Metal Siding an amount that O & G had been retaining on work performed by All Phase. We agree with both claims, and, accordingly, we reverse in part the judgment of the trial court.

Metal Siding filed a cross appeal from the judgment of the trial court rendered in favor of All Phase on the third party complaint for indemnification. On cross appeal, Metal Siding claims that the court improperly awarded (1) indemnification despite a judicial admission by All Phase that the problems with the roof were not the result of faulty installation work by Metal Siding and (2) damages for a rubber membrane roof system that was not part of the contract and represented a substantial improvement in quality and performance over the steel roof system that was required in the contract. We disagree, and, accordingly, we affirm the judgment of the trial court with regard to Metal Siding's cross appeal.

The following facts and procedural history are relevant to our resolution of these appeals. In 2000, the Hotchkiss School (Hotchkiss), a college preparatory school located on the south shore of Lake Wonoscopomic, entered into a construction management agreement with O & G for the construction of an athletic and fitness center at Hotchkiss. O & G then entered into a construction management trade contract (trade contract) with All Phase for a portion of that project. In that trade contract, All Phase agreed to furnish all

---

[1] All Phase also appealed from the court's judgment in favor of O & G. While the appeal was pending, however, All Phase and O & G entered into a settlement agreement, and All Phase withdrew its appeal as to O & G. During oral argument before this court, All Phase stated that, despite the judgment of the trial court setting the amount of damages and indemnification, the settlement amount would serve as a cap to the indemnification award. O & G did not appear for oral argument.

labor, material and equipment necessary to complete all work included in bid package 1.01, which was for a pre-engineered building. The total amount of the trade contract between All Phase and O & G was $1,048,700. A component part of the trade contract required All Phase to furnish and install a steel roof and insulation panels over the ice arena of the new athletic complex in accordance with the plans and specifications set forth in the trade contract. All Phase, in turn, entered into a subcontract agreement with Metal Siding, in which Metal Siding agreed to perform the actual assembly and erection of the pre-engineered building and the steel roofing for an amount not to exceed $233,700.[2] After Metal Siding, as subcontractor for All Phase, substantially had completed the steel roof, O & G notified All Phase that the roof was leaking. Attempts were made to repair the steel roof, but, by February, 2003, the leaks were so severe that the ice arena could not be used, and hockey season had to be cancelled. O & G notified All Phase by letter of the seriousness of the problem.

On July 17, 2003, O & G filed a two count complaint in the Superior Court against All Phase, alleging breach of contract. In August, 2003, All Phase still had not made any progress on fixing the steel roof, and O & G contacted Eastern Roofing Corporation to install a rubber membrane roof over the steel roof at a cost of $152,771.50 so that the ice arena would be usable for the next hockey season. That rubber membrane roof was installed in October, 2003. All Phase filed an answer and a counterclaim against O & G, and it successfully cited in Metal Siding as a third party defendant, seeking indemnification, pursuant to its subcontract agreement, for any damages for which it was found liable to O & G on the trade contract. Metal Siding filed a two count

---

[2] An unsigned copy of this agreement was submitted to the trial court as defendant's exhibit twenty-one. Whether a signed copy of this agreement exists is not raised as an issue in these appeals.

counterclaim against All Phase, and All Phase filed an answer with special defenses.

After a trial to the court, the court found in favor of O & G on its complaint, and it ordered All Phase to pay the sum of $80,530.73, after certain deductions, as well as O & G's attorney's fees. On the third party complaint brought by All Phase against Metal Siding, the court found in favor of All Phase, and it ordered Metal Siding to pay to All Phase the sum of $66,089.18. These appeals followed.

I

ALL PHASE'S APPEAL

We first consider All Phase's appeal from the judgment rendered in its favor against Metal Siding. All Phase claims that the court improperly failed to award it full indemnity against Metal Siding despite concluding that All Phase was entitled to indemnification. Specifically, it argues that the court should have ordered Metal Siding to indemnify All Phase for the attorney's fees that All Phase incurred defending the first party action brought by O & G and that it also should have ordered Metal Siding to indemnify All Phase for the attorney's fees that All Phase was ordered to pay to O & G on O & G's successful complaint. All Phase further claims that the court improperly deducted from its indemnification award against Metal Siding an amount that O & G had been retaining on work performed by All Phase, which money rightfully was due to All Phase. After setting forth additional facts and the relevant law, we will address each of these claims in turn.

After concluding that "All Phase breached the contract by failing to install the roof in a workmanlike manner" and that it failed to repair the roof successfully, the court awarded damages to O & G for the cost of the new rubber roof membrane in the amount of

$152,771.50 less a retainage that O & G owed to All Phase in the amount of $72,240.77, for a total of $80,530.73.[3] The court also ordered that All Phase was obligated to pay O & G's attorney's fees but reserved judgment as to the exact amount pursuant to a stipulation of the parties. The court then found, pursuant to § 5.1 of Metal Siding's subcontract agreement with All Phase, that Metal Siding was responsible to indemnify All Phase "for any claims arising out of [Metal Siding's] installation of the roof" because "the evidence show[ed] that the defects were the result of the poor installation of the roof." The court ordered that Metal Siding "must indemnify All Phase for the damages." The court then ordered Metal Siding to pay to All Phase $80,530.73, the out-of-pocket amount that All Phase was ordered to pay to O & G, minus $14,441.55 that All Phase was holding in retainage on its subcontract agreement with Metal Siding, for a total of $66,089.18.[4]

We note the standard of review. "If contract language is definitive of the parties' intent, then the interpretation of the language becomes a question of law for the court.

---

[3] A "retainage" is a "percentage of what a landowner pays a contractor, withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired." Black's Law Dictionary (7th Ed. 1999). For example, if the contract price was $10,000, with a 10 percent retainage, and payments were to be made as the work progressed, the landowner or general contractor would withhold 10 percent from each payment that it made to the party performing the work. If the party performing the work submitted an invoice for $2000 in week one, the landowner or general contractor would pay the party $1800, withholding $200 in retainage until the job was complete. The same would happen in week two. At the end of the job, the landowner or general contractor would have withheld $1000 (10 percent of the $10,000) to ensure that all of the work was acceptable and that there were no mechanic's liens. Once the work was accepted, the landowner or general contractor would pay that retainage to the party who had performed the work. In this case, the retainage of $72,240.77 was money that O & G was withholding from its payments to All Phase.

[4] The parties stipulated to the trial court that $14,441.55 was the amount of retainage held by All Phase on its subcontract agreement with Metal Siding.

. . . Additionally, a presumption that the language is definitive arises when . . . the contract is between sophisticated parties and commercial in nature. . . . Our review, in such a case, is plenary." (Citations omitted.) *Best Friends Pet Care, Inc.* v. *Design Learned, Inc.*, 77 Conn. App. 167, 176, 823 A.2d 329 (2003). Additionally, we note that in determining damages, "[t]he trial court has broad discretion . . . and we will not overturn its decision unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Valentin* v. *Community Remodeling Co.*, 90 Conn. App. 255, 260, 876 A.2d 1252 (2005).

## A

### Attorney's Fees

All Phase claims that the court improperly failed to require Metal Siding to indemnify it fully, arguing that, pursuant to the subcontract agreement, Metal Siding was responsible for the attorney's fees that All Phase incurred defending the action brought by O & G as well as the attorney's fees that All Phase was ordered to pay as damages to O & G. We agree.

In its third party complaint, All Phase alleged in relevant part: "By the terms of the . . . subcontract agreement [Metal Siding] is obligated to indemnify [All Phase] from and against the claims [that] have been asserted against [it] in this lawsuit, which claims arise from the conduct, management and performance of the

work contracted for and undertaken by [Metal Siding]. . . . All Phase has incurred and will continue to incur attorney's fees and other expenses in responding to and defending against the claims asserted by [O & G] and also faces the possible award of damages against it in favor of [O & G] as a result of the allegedly defective furnishing, erection, installation and construction of the subject building by [Metal Siding]." All Phase sought as damages: "Indemnification as to any claims for which it may be held liable . . . [a]ttorney's fees and costs . . . [and] [s]uch other relief as the court deems proper."

In rendering its decision, the court made no mention of All Phase's claim in its third party complaint that it was entitled to attorney's fees, both as indemnification for O & G's attorney's fees and for the attorney's fees for which it was responsible in defending the action brought by O & G. In part because the court failed to mention these fees, All Phase filed a motion for reargument and reconsideration, requesting, among other things, that the court consider that its "decision [did] not address the issue of [Metal Siding's] liability to indemnify All Phase for counsel fees incurred by All Phase in defending the claim of O & G against, or [Metal Siding's] liability to All Phase for attorney's fees of O & G . . . ." Although the court responded to All Phase's motion with a memorandum of decision addressing many of the issues raised by All Phase, it still did not address the issue of All Phase's claim for attorney's fees.

Section 5.1 of the subcontract agreement between All Phase and Metal Siding provided in relevant part: "Subcontractor shall indemnify and save contractor . . . harmless against and from any and all claims arising from the conduct, management or performance of the work, including, without limitation, any and all claims arising from any condition of the work or arising

from any breach or default on the part of the subcontractor in the performance of any covenant or agreement on subcontractor's part to be performed, pursuant to the terms of this [s]ubcontract, or arising from any act or negligence of subcontractor . . . and from and against all costs, reasonable counsel fees (including counsel fees on appeal), expenses and liability incurred in or about any such claim, action or proceeding by counsel satisfactory to contractor . . . ."

Section 7.7 of the subcontract agreement further provided in relevant part: "This subcontract shall be construed according to the laws of the [s]tate of Connecticut. In the event litigation arises out of this [s]ubcontract, and [All Phase] is the prevailing party, [Metal Siding] shall pay or reimburse [All Phase's] expenses and costs of same, including reasonable attorney's fees, whether incurred with respect to attempted enforcement, trial or appeal, enforcement of judgment or otherwise."

On the basis of the clear language of the subcontract agreement and the court's findings of liability, we conclude that All Phase was entitled to indemnification of the attorney's fees that it was ordered to pay to O & G as well as its own attorney's fees in defending O & G's claims against it.

## B

### The Retainage

All Phase also claims that the court failed to award full indemnification because it improperly deducted from All Phase's indemnification award an amount that O & G had been retaining on work performed by All Phase, which money rightfully was due to All Phase and which should not have been issued as a credit in favor of Metal Siding's indemnification order. We agree.

At trial, Alan Seagrave, president of All Phase, testified that All Phase had been paid the retainage for its work on the hockey rink and that the $72,240.77 retainage O & G still owed to All Phase was for work on two other buildings at Hotchkiss. The accuracy of this testimony is not in dispute, and there was no evidence to the contrary.

The court found that the "roof leaked so severely that it was irreparable . . . [and] that the evidence show[ed] that the defects were the result of the poor installation of the roof." Accordingly, it ordered that Metal Siding "must indemnify All Phase for the damages." The court also found that the cost to install the "rubber membrane over the defective roof to make the rink operational in time for the upcoming hockey season . . . [was] $152,771.50." On the basis of these findings, and others, the court concluded that All Phase was liable to O & G for the cost of the rubber membrane roof. It awarded damages to O & G in the amount of $152,771.50 minus $72,240.77, which was the amount that O & G held in retainage from All Phase, for a total out-of-pocket amount due of $80,530.73. On the indemnification claim by All Phase against Metal Siding, the court ordered that Metal Siding "must indemnify All Phase for the amount due to O & G, $80,530.73, less their stipulated retainage [that All Phase was withholding from Metal Siding] of $14,441.55, for a total of $66,089.18."

As the court found, the cost of the rubber membrane roof was $152,771.50, which was the amount that All Phase had to reimburse O & G before the court credited the retainage amount that O & G still owed to All Phase. The $72,240.77 retainage, which was credited or offset against the $152,771.50, is an amount of money that O & G actually owed to All Phase for work completed and for which the court properly gave All Phase a credit when determining the amount of its liability to O & G.

That $72,240.77, however, should not have been credited to Metal Siding, which had no entitlement to it. The court found that Metal Siding was liable to All Phase to indemnify it for the cost of the membrane roof, which was $152,771.50 and which was All Phase's liability to O & G before the court credited the amount that O & G owed to All Phase, i.e., the retainage.

We do agree with the court that All Phase, however, also owed to Metal Siding $14,441.55 in retainage for Metal Siding's work in accordance with the subcontract. With this $14,441.55 credited against All Phase's damages of $152,771.50, Metal Siding should have been ordered to indemnify All Phase in the amount of $138,329.95, plus reasonable attorney's fees as explained in part I A.

## II

## METAL SIDING'S CROSS APPEAL

On cross appeal, Metal Siding claims that the court improperly awarded (1) indemnification despite a judicial admission by All Phase that the problems with the roof were not the result of faulty installation work by Metal Siding and (2) damages for a rubber membrane roof system that was not part of the contract and which represented a substantial improvement in quality and performance over the steel roof system that was required in the contract. We are not persuaded.

## A

### All Phase's Admission

Metal Siding claims that the court improperly ordered it to indemnify All Phase despite the judicial admission, via the testimony of Seagrave, president of All Phase, that the problems with the roof were not caused by Metal Siding's installation. All Phase argues that we should decline to review this claim because Metal Siding never raised this issue in any form before the trial court

and it is being raised for the first time on appeal. If we conclude that the claim is reviewable, however, All Phase argues that the purported admission was an alternative argument, which was nothing more than an evidentiary admission that it made in contesting liability on the first party complaint brought by O & G.[5] We agree with All Phase that Metal Siding, having not raised this issue before the trial court, has failed to preserve it for appellate review.

[5] "Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them." (Citation omitted; internal quotation marks omitted.) *Borrelli* v. *Zoning Board of Appeals*, 106 Conn. App. 266, 271, 941 A.2d 966 (2008). "The statement relied on as a binding admission [however] must be clear, deliberate and unequivocal." *National Amusements, Inc.* v. *East Windsor*, 84 Conn. App. 473, 482, 854 A.2d 58 (2004). "Whether a party's statement is a judicial admission or an evidentiary admission is a factual determination to be made by the trial court. . . . The distinction between judicial admissions and mere evidentiary admissions is a significant one that should not be blurred by imprecise usage. . . . While both types are admissible, their legal effect is markedly different; judicial admissions are conclusive on the trier of fact, whereas evidentiary admissions are only evidence to be accepted or rejected by the trier." (Citation omitted; internal quotation marks omitted.) *In re Kristy A.*, 83 Conn. App. 298, 312, 848 A.2d 1276, cert. denied, 271 Conn. 921, 859 A.2d 579 (2004). Additionally, "[i]t is well settled that [f]actual allegations contained in pleadings upon which the cause is tried are considered judicial admissions and hence irrefutable as long as they remain in the case." (Internal quotation marks omitted.) *Borrelli* v. *Zoning Board of Appeals*, supra, 271.

"In contrast with a judicial admission, which prohibits any further dispute of a party's factual allegation contained in its pleadings on which the case is tried, [a]n evidential admission is subject to explanation by the party making it so that the trier may properly evaluate it. . . . Thus, an evidential admission, while relevant as proof of the matter stated . . . [is] not conclusive." (Citation omitted; internal quotation marks omitted.) *Nationwide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 542, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004). "Because the probative value of an admission depends on the surrounding circumstances, it raises a question for the trier of fact. . . . The trier of fact is free to give as much weight to such an admission as, in the trier's judgment, it merits, and need not believe the arguments made regarding the statement by one side or the other." (Citation omitted; internal quotation marks omitted.) Id., 541.

"The determination of whether a party's statement is a judicial admission or an evidentiary admission is a question of fact for the trial court." (Internal quotation marks omitted.) *Young* v. *Vlahos*, 103 Conn. App. 470, 477, 929 A.2d 362 (2007), cert. denied, 285 Conn. 913, A.2d (2008); see *Sweet* v. *Sweet*, 190 Conn. 657, 662, 462 A.2d 1031 (1983) ("[w]hether these statements when viewed as a whole result in a judicial admission is a determination best left to the trial court which observed the witnesses, heard the testimony and was the sole judge of the weight to be accorded such testimony"); see also *Hudson United Bank* v. *Cinnamon Ridge Corp.*, 81 Conn. App. 557, 565 n.10, 845 A.2d 417 (2004) (witness or party should not be presumed to have made judicial admission without finding of trial court); *Harlan* v. *Norwalk Anesthesiology, P.C.*, 75 Conn. App. 600, 608–609, 816 A.2d 719 (court must be asked to make finding as to nature of admission), cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003). Because the trial court was never asked to rule on this issue, we are not able to review it for the first time on appeal.

B

The Measure of Damages

Metal Siding claims that the court applied an improper "measure of damages for breach of warranty in a construction contract." It argues that "O & G and All Phase entered into a contract for the construction of a steel roof system . . . [and O & G] claimed that All Phase breached its warranty by providing a steel roof [that] leaked. Rather than repair the steel roof system, [O & G] installed a roof of an entirely different design. The different design was a substantial upgrade from the steel roof specified in the contract documents." Metal Siding argues that the court should not have awarded damages to O & G based on this "betterment" but should have awarded damages only for the cost of repairing the steel roof.

1

Before considering the merits of Metal Siding's claim, we must solve a conundrum with which we are faced. In this case, All Phase appealed from the judgment of the trial court, claiming, among other things, that the measure of damages awarded to O & G was improper. Metal Siding set forth a similar claim in addition to its claim against All Phase. The parties submitted appellate briefs, but, before oral argument, All Phase and O & G reached a settlement, and All Phase withdrew its appeal as to O & G. O & G, although briefing a response to the claims asserted by All Phase, did not brief a response to Metal Siding's claim. O & G also did not appear for oral argument on Metal Siding's claim that the damages awarded to O & G were improper, nor was this claim addressed by All Phase during oral argument. Metal Siding, however, did address it during argument, but it did not address the procedural aspect of the claim.

The defendant-third party plaintiff, All Phase, withdrew its appeal as to the plaintiff, O & G, but continued its appeal as to the third party defendant, Metal Siding. The third party defendant and cross appellant, Metal Siding, filed a cross appeal, claiming, in part, that the judgment as between O & G and All Phase was improper because the court used an improper method for determining damages, which, obviously, it argues affected the indemnification award. O & G did not attend oral argument, likely believing that it was no longer a party to the appeal or the cross appeal. Although neither All Phase nor Metal Siding raised it as an issue before us, we must determine as a threshold issue whether a third party defendant may bring a claim attacking the propriety of the judgment as between the first party plaintiff and the first party defendant where there was no direct action (no complaint, answer or defenses) between the first party plaintiff and the third

party defendant.[6] On the basis of *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 141–44, 475 A.2d 305 (1984), we conclude that it may.

In *Gino's Pizza of East Hartford, Inc.*, the third party defendant appealed from the judgment of the trial court, claiming, among other things, that the award of attorney's fees between the first party plaintiff and the first party defendant was improper and that, therefore, the judgment ordering the third party defendant to indemnify the attorney's fees of the first party defendant-third party plaintiff also was improper. Id., 141. Recognizing the "procedural wrinkle" in the case, our Supreme Court analyzed whether a third party defendant could challenge the judgment as between the first party plaintiff and the first party defendant when the first party defendant had not challenged the judgment on appeal. Id. Relying on the interpretation of rule 14 of the Federal Rules of Civil Procedure expressed in *Kicklighter* v. *Nails By Jannee, Inc.*, 616 F.2d 734 (5th Cir. 1980), on

[6] General Statutes § 52-102a provides in relevant part: "(a) A defendant in any civil action may move the court for permission as a third-party plaintiff to serve a . . . complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. . . .

"(b) The . . . complaint . . . shall be equivalent in all respects to an original . . . complaint and the person upon whom it is served, hereinafter called the third-party defendant, shall have available to him all remedies available to an original defendant, including the right to assert set-offs or counterclaims against the third-party plaintiff, and shall be entitled to file cross-complaints against any other third-party defendant. The third-party defendant may also assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim and may assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

"(c) The plaintiff, within twenty days after the third-party defendant appears in the action, may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the original complaint, and the third-party defendant, as against such claim, shall have available to him all remedies available to an original defendant, including the right to assert set-offs or counterclaims against the plaintiff. . . ." See Practice Book § 10-11.

which Practice Book § 10-11 was modeled, our Supreme Court held that to restrict the third party defendant on appeal would be anomalous because the first party defendant's "failure to appeal should not result in [the indemnitor] having to pay an erroneous award." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* supra, 193 Conn. 141–42.

The court explained that in *Kicklighter,* "the [federal] court allowed a third party defendant to assert on appeal claims of error in the main case . . . even though the defendant/third party plaintiff did not appeal from that judgment. In so holding, the court turned to the language in rule 14 of the Federal Rules of Civil Procedure which provides that 'a third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim' and concluded '[f]rom this provision, we think it logically follows that the third-party defendant may assert on appeal errors in the main case. See 6 C. Wright and A. Miller Federal Practice and Procedure § 1463 n.61 (1971).' " *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* supra, 193 Conn. 141–42.

Our Supreme Court then explained that "[w]e have an almost identical provision in Practice Book § 117 [now § 10-11] which provides in relevant part that '[t]he third-party defendant may also assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim.' " *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* supra, 193 Conn. 142. Accordingly, the court held that it saw "no reason to apply a different logic to the construction of this provision than that applied to the federal rule. Thus, [it] construe[d] this provision as permitting . . . the third party defendant to challenge the judgment against [the first party defendant]" because it was derivative thereof. Id. On the basis of this holding, we conclude that Metal Siding may

bring a claim challenging the assessment of damages in the main case between All Phase and O & G.[7]

### 2

Metal Siding claims that the court applied an improper "measure of damages for breach of warranty in a construction contract," arguing that the court improperly awarded damages to O & G based on a "betterment," rather than on the cost of repairing the metal roof for which the parties had contracted. It further argues that "[r]epairs that give the owner more than the owner originally bargained for equitably require that the owner's 'cost to repair' damages be reduced by the amount of the 'betterment.'" We are not persuaded.

The trial court has broad discretion in determining damages, and its decision will not be overturned unless it is clearly erroneous. *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 68, 717 A.2d 724 (1998). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts

---

[7] Because our Supreme Court agreed with the claim of the third party defendant in *Gino's Pizza of East Hartford, Inc.*, it then went on to determine what it called "a second procedural wrinkle," the scope and effect of that holding on all of the parties, and it determined that the third party defendant's claim could be used not only to its own benefit but also to the benefit of the nonappealing first party defendant; the court then vacated the judgment on attorney's fees as to both the third party defendant and the first party defendant. *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, supra, 193 Conn. 142–43. The court explained that "[the third party defendant's] liability, based on implied indemnity . . . [was] derivative of [the first party defendant's] liability to [the first party plaintiff] and [its] reversal of the judgment against [the third party defendant was] based solely on an error in the main case . . . ." (Citation omitted.) Id., 144.

Before we would have to consider the scope and effect of any reversal regarding the measure of damages, however, we first must consider whether the measure of damages in the main case was improper.

set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) Id.

"As a general rule, in awarding damages upon a breach of contract, the prevailing party is entitled to compensation which will place [it] in the same position [it] would have been in had the contract been properly performed. . . . Such damages are measured as of the date of the breach. . . . For a breach of a construction contract involving defective or unfinished construction, damages are measured by computing either (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste." (Citations omitted; internal quotation marks omitted.) *Levesque* v. *D & M Builders, Inc.*, 170 Conn. 177, 180–81, 365 A.2d 1216 (1976). The court may consider evidence demonstrating that the repairs undertaken by the plaintiff were necessary to restore the facility to the condition that it would have been in had it been constructed as warranted. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 61, 717 A.2d 77 (1998). The repairs, however, may not result in improvements to the property, in the sense that they may not be of a different and superior type than they would have been had they been constructed as warranted. Id. "The nonbreaching party [however] has a duty to minimize any damages as a result of the breach . . . [and] a nonbreaching party who attempts to mitigate [its] losses may recover [its] expenditures

toward that goal from the breaching party." (Citations omitted.) *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 610, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000).

The crux of Metal Siding's argument is that O & G contracted for a steel roof system, the design of which was specified in the bid documents. Even if the steel roof had been poorly installed, Metal Siding argues, O & G was not entitled to a rubber roof, the installation of which was a substantial improvement over the steel roof that Metal Siding had been hired to install. The rubber roof was outside the scope of the bid documents and was installed because O & G realized that the steel roof system had design limitations that were not present in the rubber roof. On the basis of these arguments, Metal Siding contends that the court should have awarded damages that would have put O & G "in the position it would have enjoyed had the contract been performed as written [and] damages [should have been] measured against the very contract specifications which [O & G] allege[d] were not followed." Metal Siding argues that the evidence demonstrated that the steel roof could have been repaired to meet the bid specifications for $38,525. Although we agree that there was evidence that repairs could have been made for $38,525, the court was free to credit or discredit this evidence, and a review of the record convinces us that there is support for the court's ultimate findings and conclusions.

After hearing all of the evidence presented at trial, the court specifically found that "All Phase breached the contract [with O & G] by failing to install the roof in a workmanlike manner . . . [and that although] All Phase was notified of the defects, it did not successfully repair the roof." The court also found that although there was "evidence that this type of roof, even if properly installed, may have some long-term problems, that

[was] not an issue that [was] relevant to the court . . . [because] [t]his roof leaked so severely that it was irreparable approximately [ninety] days after installation . . . [and] the evidence show[ed] that the defects were the result of the poor installation of the roof." In assessing damages, the court found, "O & G contracted for a new roof that was to be built to certain specification and installed in a workmanlike manner. By the end of February, 2003, the extent of the leakage and failures of the roof was irreparable. Mere patchwork fixes and repairs were not a viable way to conform the roof to the standard of workmanlike performance. The value . . . of the roof that All Phase provided [to O & G] was negligible since it could not keep out the water and rendered the rink unusable. Therefore, the difference in value between what O & G contracted for and what [it] got is the full value of a properly constructed and installed roof. . . . Tearing down the roof to start over, however, would have been economic waste. Instead, to obtain such a roof that would meet the standards of workmanlike performance in time for the next hockey season, O & G installed the rubber membrane over the existing structure. Quite simply, installing the rubber membrane was not an impermissible betterment. Rather, it was a reasonable and cost-effective way to remedy the defect in time for the upcoming hockey season."

The court also explained that "the installation of this membrane was an attempt at mitigation by O & G. The roof was so defective that the only way to get a conforming roof built to the specifications in the original contract would have been to tear down and construct a whole new roof. Had O & G chosen to do this, [it] would have been entitled to all the damages and costs incurred in building the new roof." The court held that "O & G [was] entitled to recover the full amount of out of pocket expenses incurred in installing the

rubber membrane [because this would] best place O & G in the position that [it] would have been in had the original contract been performed."

On appeal, "[o]ur role is not to retry the facts. . . . [W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole . . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 301, 685 A.2d 305 (1996).

After reviewing the evidence presented at trial, we find support in the record for the court's findings and conclusions. Charles Geyer, the project manager for O & G, testified that § 3.2 of the contract between Hotchkiss and All Phase required the installation of sealant and gaskets to prevent weather penetration, which, in his opinion, meant that "they would provide a building that did not leak." He explained that this, in turn, meant that "as the contractor, [O & G] expected the subcontractor to provide a building that did not leak." Geyer explained that this roof had leaks all along, which he admitted was not unusual, and that when All Phase was notified, Metal Siding came out to repair the leaks. He further explained that in February, 2003, the roof still was leaking, and he expected Metal Siding to come back and "repair these leaks as they had done with other leaks in the past." However, the facility then experienced a failure of the roof, "where [there were] leaks occur[ring] at almost every lap joint on a particular

column lineup and even some of the next column lineup. It just really rendered the rink useless." O & G notified All Phase by writing of the seriousness of these leaks in a letter dated February 25, 2003. Hotchkiss had to cancel its summer hockey program, and a graduation dinner that was held in May in the ice rink building was ruined when the roof leaked "on all the trustees and everyone" during a heavy rain and wind storm. Geyer also testified that by the end of May, he had discovered that "any repairs that we did, because of the missing butyl caulk . . . we would have to do a considerable amount of damage to the roof to open it up to repair it, and any repairs that we did, all indications were— and this was even from [the building manufacturer, American Building]—that they would not be permanent repairs."

Geyer also stated that by July 21, 2003, All Phase still had not submitted a plan to O & G, and, accordingly, O & G sent a letter to All Phase advising that it had put its own plan into place and that it was seeking approval from the manufacturer. Although All Phase wrote in an August 14, 2003 letter to O & G that it had a plan in place and that it would be moving ahead in conjunction with American Building, Geyer testified that the letter also indicated that the plan was attached, but Geyer saw no attachment.

Further evidence before the court came from the testimony of Paul Darling, a roofing consultant, hired by Hotchkiss, who testified that Hotchkiss asked him to evaluate the metal roof in the spring of 2003. Darling testified that many areas of the roof lacked the necessary sealant, the absence of which would cause water leakage. He opined that the problems with the roof were caused by poor installation. Darling also stated that he did not think that repairing the lap seams in this case was a viable option. He stated: "The chances of success are small. It's a low probability, high risk of

continuing leaks even after you try to do it. Unbending the standing seams, being steel, is very difficult. Things end up looking like a washboard. You can't get them straight. . . . [If you] bend [steel] and unbend it a few times . . . it also has a potential to crack off from work hardening." He further stated that the rubber roofing system was a cost-effective and fast way to correct this problem.

Although there certainly was evidence that contradicted portions of the cited testimony, the court was free to credit or discredit the testimony of any of the witnesses in whole or in part. Our responsibility on appeal is to determine whether there exists support in the record for the court's findings, not to retry the case. See *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, supra, 239 Conn. 301. Our review of the record reveals such support.

## III

## CONCLUSION

The judgment is reversed as to the indemnification award to All Phase and the case is remanded for a recalculation of the indemnification award in accordance with this opinion. On remand, the court should also consider the effect of the settlement between O & G and All Phase on the amount of indemnification for which Metal Siding is responsible. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.